## NEAL *v.* CLARK.

1. The word "fraud," as used in the thirty-third section of the bankrupt law of 1867, which provides that "no debt created by the fraud or embezzlement of the bankrupt, or by defalcation as a public officer, or while acting in a fiduciary capacity, shall be discharged under this act," means positive fraud or fraud in fact, involving moral turpitude or intentional wrong, and not implied fraud or fraud in law, which may exist without the imputation of bad faith or immorality.

2. Accordingly, where a party paid an executor for a portion of the assets of an estate which he purchased at a discount, but without any actual fraud, and where he was, with the executor, who failed to account therefor, held liable for a *devastavit*, — *Held*, that his subsequent discharge in bankruptcy was a complete defence to an action against him for such *devastavit*.

ERROR to the Supreme Court of Appeals of the State of Virginia.

The facts out of which this case arises, so far as it is material to state them, are substantially these: —

William Fitzgerald, Jr., of the State of Virginia, by his will, which was admitted to probate in 1857, directed his executor to sell his entire landed estate, and distribute the proceeds among those entitled to them, according to the provisions of the will. The lands were sold as directed, in the same year, the purchasers giving bonds, with security, payable to the executor as such. Two of these bonds, each dated Dec. 1, 1857, — one for $1,000, due Nov. 18, 1859, with interest from Nov. 18, 1858, and the other for $2,293, due, with like interest, Nov. 18, 1860, — were sold and assigned by the executor, in June, 1859, to Griffith D. Neal, the plaintiff in error, for the sum of $2,780, who sold them to Richard Jones for $3,056. The latter collected them. When this transaction occurred, the executor, who was a brother of the testator, was a man of large property and undoubted solvency. Neal made no inquiry as to the condition of the estate, but the executor gave, as a reason for selling the bonds, that the estate was in debt to him for moneys advanced.

In 1860, a suit was instituted against the executor in the Circuit Court for Pittsylvania County, Virginia, to obtain a settlement of his accounts and a distribution of the estate. In 1861,

in obedience to an order of court, he gave a new bond, with Clark and Holland as sureties; and in 1868 they were made defendants, and a decree was asked against them for whatever sum should be ascertained to be due from the executor. In 1869, — ten years after Neal had purchased the bonds, about seven years after the executor had become insolvent and removed from the State, and without any question having been previously raised as to Neal's liability, — Clark and Holland exhibited their bill in the same court against the executor, the distributees, Neal, Jones, and others. They allege that the executor, in disposing of the bonds, committed a *devastavit* of the estate, and that, in view of the circumstances under which he received them, Neal became a participant in that *devastavit*, and is liable to the distributees for the amount of the bonds. They ask that, as sureties of the executor, they be substituted to the rights which the distributees have against Neal by reason of his alleged unlawful appropriation of the testator's assets. In the event of any judgment against them, they pray that it be rendered to be first satisfied by the purchaser of the notes.

In the District Court of the United States for the District of Virginia Neal was duly adjudged a bankrupt, and received his certificate, dated Feb. 11, 1869, showing his discharge from all debts and claims which, by the bankrupt law, were provable against his estate, and which existed on the 25th of January, 1868, " except such debts as were exempted from the operation of a discharge in bankruptcy."

Neal pleaded his discharge in bar of the action against him, but the Circuit Court for Pittsylvania County gave judgment against him and Jones for the amount of the two notes purchased from the executor. That judgment, so far as it held Neal liable, was affirmed in the Supreme Court of Appeals of Virginia, but, so far as it related to Jones, was reversed. Thereupon Neal brought the case here.

*Mr. William A. Maury* for the plaintiff in error.

The " fraud or embezzlement " described by the bankrupt law of 1867 refers only to transactions involving criminal intent and wilful wrong-doing.

The object of statutes in relation to embezzlement is to

embrace certain cases where, although the moral guilt was quite as great as in larceny, the technical objection, arising from the fact of possession lawfully acquired by the offending party, screened him from punishment. They were, therefore, declared crimes punishable by law. *Commonwealth* v. *Simpson*, 9 Met. (Mass.) 192.

The association of 'fraud' with "embezzlement" fully justifies the conclusion that the legislature used the former word to indicate a transaction involving moral turpitude.

To deprive a party guilty of no intentional wrong of the benefit of his discharge in bankruptcy, upon the ground that he has committed a technical *devastavit*, defeats to that extent an act for the relief of the unfortunate debtors who in good faith surrender their property to their creditors.

No counsel appeared for the defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

This case involves the meaning of the word "fraud," as used in the thirty-third section of the bankrupt law of 1867. That section provides that "no debt created by the fraud or embezzlement of the bankrupt, or by defalcation as a public officer, or while acting in a fiduciary capacity, shall be discharged under this act."

In the very able opinion of the Court of Appeals, it is said that "all the cases agree in the principle that a purchaser from an executor of personal property of the testator for valuable consideration need not inquire, and has no means of inquiry, whether the condition of the testator's estate requires a sale of the property, and is not bound to see to the application of the purchase-money, but may fairly presume that the sale is rightly made, and that the purchase-money will be properly applied; and that such a purchaser can only be made liable on the ground of a fraudulent participation with the executor in the commission of a *devastavit* of his testator's estate. In other words, that the purchaser must be guilty of a fraud in that respect."

"The only diversity in the cases," continues that court, "seems to have arisen from the different views of the judges as to the nature of the fraud within the meaning of the principle;

that is, whether there must be actual fraud, or whether it is enough that there is implied or constructive fraud, or gross negligence, which may be equivalent to fraud."

Upon an elaborate review of the authorities, mainly its own previous decisions, and upon consideration of all the evidence, that court reached these conclusions : —

1st, That the executor had committed a *devastavit* by selling the bonds at a discount, since the needs of the estate did not require it, and since they had not become his property by reason of any advances made by him, or otherwise.

2d, That Neal was not chargeable with actual fraud, but, in view of the circumstances attending his purchase, he had committed constructive fraud, which implicated him in the *devastavit.*

3d, That " fraud," in the thirty-third section of the bankrupt law of 1867, included both constructive and actual fraud, and consequently that Neal, although guilty of constructive fraud only, was equally liable with the executor who had wasted the estate and failed to account for the amount of the bonds assigned to Neal.

Whether Neal, according to the previous decisions of the Virginia courts, was guilty of constructive fraud, and, upon that ground, became liable to the distributees as a participant in the *devastavit* of the estate, it is not within our province, upon this appeal, to inquire. Our jurisdiction extends to the re-examination of the final decree, only so far as it involves the construction of the bankrupt law and the denial, by the State court, of rights claimed by the bankrupt under that law.

We concur in the view expressed by the State court, that Neal was not guilty of actual fraud. The evidence does not show that he entertained any purpose himself to commit a fraud, or to aid the executor in committing one. The fair inference from all the testimony is that he purchased the bonds in good faith, not doubting the power or the right of the executor to sell, and having no reason to believe that he meditated any wrong to those interested in the estate which he was administering. Indeed, it appears from the opinion of the State court, that, a few months prior to the purchase, a commissioner had reported a settlement of the executor's accounts, showing a

balance due the latter of $765.41. That settlement was of record.

But we do not concur in the construction which the State court gave to the thirty-third section of the bankrupt law of 1867. In reaching this conclusion, we have not been assisted by any express decisions upon the question before us.

The Bankrupt Act of 1841 exempted from discharge debts " created in consequence of a defalcation as a public officer, or as executor, administrator, guardian, or trustee, or while acting in any fiduciary capacity." The question arose under that act whether a factor who had sold the property of his principal, and had failed to pay over the proceeds, was a fiduciary debtor within the meaning of that clause. This court, in *Chapman* v. *Forsyth et al.*, 2 How. 202, said : " If the act embrace such a debt, it will be difficult to limit its application. It must include all debts arising from agencies, and, indeed, all cases where the law implies an obligation from the trust reposed in the debtor. Such a construction would have left but few debts on which the law could operate. In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor; and a violation of these is, in a commercial sense, a disregard of a trust. But this is not the relation spoken of in the first section of the act.

" The cases enumerated, ' the defalcation of a public officer,' ' executor,' ' administrator,' ' guardian,' or ' trustee,' are not cases of implied, but special, trusts; and ' the other fiduciary capacity ' mentioned must mean the same class of trusts. The act speaks of technical trusts, and not those which the law implies from the contract. A factor is not, therefore, within the act."

A like process of reasoning may be properly employed in construing the corresponding section of the act of 1867. It is a familiar rule in the interpretation of written instruments and statutes that " a passage will be best interpreted by reference to that which precedes and follows it." So, also, " the meaning of a word may be ascertained by reference to the meaning of words associated with it." In Broom's Legal Maxims, p. 450, it is said: " It is a rule laid down by Lord Bacon, that *copulatio verborum indicat acceptationem in eodem sensu,* — the coupling of words together shows that they are to be under-

stood in the same sense.  And where the meaning of any particular word is doubtful or obscure, . . . the intention of the party who has made use of it may frequently be ascertained and carried unto effect by looking at the adjoining words." The same author says (p. 455): "In the construction of statutes, likewise, the rule *noscitur a sociis* is very frequently applied; the meaning of a word, and, consequently, the intention of the legislature, being ascertained by reference to the context, and by considering whether the word in question and the surrounding words are, in fact, *ejusdem generis*, and referable to the same subject-matter."

Applying these rules to this case, we remark, that, in the section of the law of 1867 which sets forth the classes of debts which are exempted from the operation of a discharge in bankruptcy, debts created by "fraud" are associated directly with debts created by "embezzlement." Such association justifies, if it does not imperatively require, the conclusion that the "fraud" referred to in that section means positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, as does embezzlement; and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality.  Such a construction of the statute is consonant with equity, and consistent with the object and intention of Congress in enacting a general law by which the honest citizen may be relieved from the burden of hopeless insolvency.  A different construction would be inconsistent with the liberal spirit which pervades the entire bankrupt system.

It results from what has been said that the debt or claim asserted against Neal was not "created by the fraud . . . of the bankrupt," within the meaning of the thirty-third section of the law of 1867.  His discharge in bankruptcy affords him complete protection.  The court erred in adjudging otherwise.

The judgment of the Supreme Court of Appeals of Virginia will, therefore, be reversed, with directions to reverse the decree rendered against Neal in the Circuit Court for Pittsylvania County, and to remand the case to the last-named court, with an order requiring it to dismiss the original and cross-bill of Clark and Holland against Neal, with costs, and for other proper action in conformity to this opinion; and it is

*So ordered.*