## *In re* WARNE, Bankrupt.*

*(District Court, E. D. Pennsylvania.   January 10, 1882.)*

**1. DISCHARGE—FRAUD.**

The fraud contemplated by the statute as a bar to the bankrupt's discharge is fraud in fact, involving moral turpitude—intentional wrong.

**2. SAME.**

In the absence of proof of such intentional wrong, the failure of a bankrupt to deliver over to the assignee property which he had given to his daughter will not bar his discharge, even though the transfer to the daughter may have amounted to constructive fraud, and have been void as against creditors.

**3. FAILURE TO PRODUCE BOOKS—PERJURY.**

The fact that after the bankrupt testified that he had not kept certain books of account, he found and produced such books, will not bar his discharge, it not appearing that there was intentional false swearing, or any motive for concealment.

In Bankruptcy.   Exceptions to register's report upon an application for discharge.

One of the specifications against the discharge was that the bankrupt had not delivered to the assignee a horse, phaeton, and harness belonging to him.   On this point the register reported as follows:

"The horse, phaeton, and harness are also charged as being the bankrupt's property, and not delivered to the assignee.   Of this the bankrupt says: 'The horse called 'Major,' this my daughter claimed.   That is not included among those I testified to.   It is not in my schedules, nor in the appraisement list of the assignee.   I guess my daughter has that horse now.   She also claimed the phaeton, which she still has, and the harness.'   Again: 'I am agent for my daughter.   She is a young, unmarried lady, living with me. She is of age, I think, 22 or 23.'   In this connection it is proper to refer to the fact that the farm was bought by Warne's mother-in-law; *the horse,* and a *stallion,* by his wife.   Now, in relation to all these transactions by the three generations of ladies,—the mother-in-law, mother, and daughter,—it is difficult for the register, with the light before him, to pass judgment.   If the means which acquired the bulk of the bankrupt's estate are derived from their separate estates, or independently of the bankrupt, then they had as much right to buy as strangers; if from the bankrupt, then they belong to the assignee, and one effect of this non-delivery is to prevent the bankrupt's discharge.   Neither the opposing creditors nor the bankrupt has probed this matter to the bottom, the former contenting themselves with showing that Mrs. Warne paid $1,000 for the stallion in cash, and that the daughter kept the horse and phaeton.   Under the ordinary presumption that property found in possession of the head of the family was paid for with his means, it seems that it was Mr. Warne's plain duty, when his attention was called to these

*Reported by Frank P. Prichard, Esq., of the Philadelphia bar.

transactions, to show that he did not furnish the money, or, if he did, that it was done at a time when he had a right to furnish it. And it may possibly be that he can show this. As the evidence stands, however, at present, the register thinks that Mr. Warne stands in the light of one whose property is retained under cover of his family, and that the specification must be sustained."

Another specification against the discharge was that the bankrupt had not kept proper books of account. Upon the final examination the bankrupt swore that he had not kept such books, but he afterwards found a properly kept cash-book, and other books, from which an expert accountant said he could prepare proper accounts, etc. Upon the petition of the bankrupt the register reopened the case, admitted this testimony, and reported to the court conformity with the bankrupt act in all respects except in this: that the bankrupt had not delivered the horse, phaeton, and harness which were claimed by the bankrupt's daughter. Both the creditors and the bankrupt excepted to the action and report of the register, and the creditors filed additional specifications at bar against the discharge, on the ground that the bankrupt had sworn falsely when he said that he had not kept proper books of account.

*Hon. W. W. Schuyler* and *Sharp & Alleman,* for bankrupt.

*W. D. Luckenbach,* for creditors.

BUTLER, D. J. The register finds that the bankrupt was guilty of fraud, in failing to deliver to his assignee a horse, phaeton, and harness, as charged in the specification, and that he is not, therefore, entitled to a discharge.

It is probable the register is right in finding that this property belonged to the bankrupt, and should have been returned to the assignee; but we cannot accept his conclusion that the failure to return it, standing alone, shows such fraud as forbids the bankrupt's discharge.

The most reasonable inference from the facts is that he did not know it should be returned,—that he believed it to be his daughter's. Accepting the creditor's allegation that he had given it to her, it was hers as respects everybody but creditors. To hold that he was familiar with the law on the subject, and consequently knew that the property should be returned, would not be justifiable. At most, his failure to return it should be regarded as a mistake. As respects the question of discharge, such a mistake is unimportant. The transfer to the daughter may have amounted to constructive fraud; but the failure to deliver to the assignee, through want of knowledge,

would hardly amount even to this. The fraud contemplated by the statute, as a bar to the bankrupt's discharge, is fraud in fact, involving moral turpitude—intentional wrong. *Neal* v. *Clark*, 95 U. S. 704; *Sharpe* v. *Warehouse Co.* 37 Leg. Intel. 85; *Stewart* v. *Platt*, Id. 118; *In re Wyatt*, 2 N. B. R. 280.

The register's act in reopening the case and admitting further proof was right.

The specifications subsequently prepared, and filed on the argument, should have been filed while the matter was before the register, and been reported upon by him. In the absence of a report they cannot be satisfactorily considered, and we do not think the case should be kept open by another reference. I may say, however, that I do not find in the case anything to sustain these specifications. No motive is suggested, or can be discovered, for the false swearing attributed to the bankrupt. His testimony was directly against himself. The only admissible inference is that he was laboring under a misapprehension, either as respects the question propounded, or the facts of which he spoke. Nor does it appear that he had any motive to conceal his books. They contained nothing that could be used against him, so far as appears; and their production was essential to his own case. I find no satisfactory evidence that he was guilty of wilful neglect or misconduct respecting his books.