## McCLELLAN v. SCHMIDT, Sheriff.

(District Court, D. New Jersey. September 20, 1916.)

1. BANKRUPTCY ⊂⇒424—DEBTS RELEASED BY DISCHARGE—"WILLFUL AND MALICIOUS INJURY TO PERSON."

To constitute a "willful and malicious injury to the person or property of another," within Bankr. Act July 1, 1898, c. 541, § 17(2), 30 Stat. 550, as amended by Act Feb. 5, 1903, c. 487, § 5, 32 Stat. 798 (Comp. St. 1913, § 9601), which provides that liability for such an injury shall not be released by a discharge in bankruptcy, something more than mere negligence is necessary; there must be an intent to commit a wrong either through actual malice or from which malice will be implied.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 787, 818; Dec. Dig. ⊂⇒424.]

2. BANKRUPTCY ⊂⇒424—DEBTS RELEASED BY DISCHARGE—"WILLFUL AND MALICIOUS INJURY TO PERSON."

Petitioner built a fire in the street to burn leaves, and, after he had left it as dead, the clothes of a boy five or six years old, who was throwing leaves thereon, caught fire, and he was seriously burned, for which injury a judgment was obtained against petitioner. There was no intent

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

on his part to injure the child. Petitioner was afterward discharged in bankruptcy. *Held*, that the judgment was not for a "willful and malicious injury to the person," and that he was released therefrom by his discharge.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 787, 818; Dec. Dig. ☜424.]

Petition by Douglas Y. McClellan against Ralph B. Schmidt, Sheriff of Essex County, N. J., for writ of habeas corpus. These proceedings were instituted for the discharge of the relator in default of payment of judgment obtained against him for tort on the ground that the judgment is released by a discharge in bankruptcy and does not come within the exception of section 17 (2) of the Bankruptcy Act of 1898. Writ granted.

Lum, Tamblyn & Colyer, of Newark, N. J., for relator.
Terry Parker, of East Orange, N. J., for respondent.

DAVIS, District Judge. William A. Davenport, by his next friend, William E. Davenport, obtained judgment April 22, 1916, against the relator in the Supreme Court of New Jersey, for the sum of $4,000 and costs, in an action at law for a tort committed by the relator. In default of payment, execution was issued against his person and he was committed to the Essex county jail on June 3, 1916. The relator filed a voluntary petition in bankruptcy in this court and duly scheduled the said judgment and was adjudicated a bankrupt on May 19, 1916. He filed a petition for writ of habeas corpus, and the cause is before this court upon the return of said writ.

[1, 2] The proofs submitted establish the following facts: The relator built a fire in South Clinton street, East Orange, on November 4, 1911, for the purpose of burning leaves which he had collected in a pile about two feet wide and three feet long. In reply to the question, "What time did you build this fire?" the relator said, "Half past eight to half past nine." And in reply to the question, "What was its (fire) condition when you left?" relator replied, "It was dead." It does not appear how long the fire burned. The reply of the relator refers, as I take it, to the time when he built the fire, and not to the period during which it burned. The fire was evidently not entirely "dead" when the relator left it, for some time afterward the clothes of the plaintiff, a boy five or six years of age, caught fire while he was throwing leaves thereon and he was seriously burned. The fire either appeared to be "dead" when the relator left it and was rekindled, or he was mistaken as to the condition thereof when he left it.

The question to be determined by this court is whether or not a discharge in bankruptcy of the relator releases the said judgment. Section 17 of the Bankruptcy Act of 1898 provides that:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as * * * (2) are liabilities for obtaining property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another." Comp. St. 1913, § 9601.

If the liability represented by this judgment was for "willful and malicious injuries to the person" of the plaintiff, within the meaning

of said section of the Bankruptcy Act, the liability is not released. If, on the other hand, the liability is not for "willful and malicious injuries to the person" of the plaintiff, the debt is released and the prisoner should be discharged. The determination of the question depends upon the meaning of the words "willful and malicious" as used in the act. It is illuminating to observe how similar provisions have been construed in the Bankruptcy Acts of 1841 and 1867.

The act of 1841 exempted from discharge debts "created in consequence of a defalcation as a public officer; or as executor, administrator, guardian or trustee, or while acting in any other fiduciary capacity." Act Aug. 19, 1841, c. 9, § 1, 5 Stat. 441. The Supreme Court held, in the case of Chapman v. Forsyth et al., 2 How. 202, 208 (11 L. Ed. 236), that the trusts referred to by the act "are not cases of implied but special trusts, and the 'other fiduciary capacity' mentioned must mean the same class of trusts. The act speaks of technical trusts, and not those which the law implies from the contract."

The act of 1867 provided that:

"No debt created by * * * fraud or embezzlement * * * or by * * * defalcation as a public officer, or while acting in" a fiduciary capacity, "shall be discharged under this act." Act March 2, 1867, c. 176, § 33, 14 Stat. 533.

The Supreme Court, applying the rule that the coupling of words shows that they are to be understood in the same sense, held that "fraud," as used in this section, meant "positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, as does embezzlement; and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality." Neal v. Clark, 95 U. S. 704, 24 L. Ed. 586.

Lord Bacon, in Broom's Legal Maxims, p. 450, said:

"Where the meaning of any particular word is doubtful or obscure, * * * the intention of the party who has made use of it may frequently be ascertained and carried unto effect by looking at the adjoining words."

Again, on page 455, he says:

"In the construction of statutes, likewise, the rule noscitur a sociis is very frequently applied; the meaning of a word, and consequently the intention of the Legislature, being ascertained by reference to the context, and by considering whether the word in question and the surrounding words are in fact ejusdem generis, and referable to the same subject-matter."

Section 17(2) provides that liability for the following class of cases is not released by a discharge in bankruptcy: (a) Obtaining property by false pretenses or false representations; (b) willful and malicious injury to the person or property of another; (c) for alimony due or to become due; (d) for seduction of an unmarried female; (f) for criminal conversation. Alimony, maintenance, or support of a wife or child on the ground of humanity and public policy are not released. In each of the other cases—false pretenses, false representations, seduction of an unmarried female, criminal conversation—the acts are wrong in themselves and exhibit a "malignant spirit or a specific intention to hurt a particular person." They show a "depraved inclination," moral turpitude, and reckless indifference to the rights of others. The

application of the principle of Lord Bacon justifies the conclusion that the words "willful and malicious" do not have the general, broad, legal significance, but that they are used in a more narrow and specific sense, implying actual malice and "willful disregard of what one knows to be his duty, an act which is against good morals and wrongful in and of itself, and which necessarily causes injury and is done intentionally." It is not necessary that "malice," as used in the phrase "willful and malicious injuries to the person," should be shown toward a particular individual. In acts of a certain character, the law will imply malice. Mr. Justice Peckham said, in Tinker v. Colwell, 193 U. S. 473, 489, 490, 24 Sup. Ct. 505, 510 (48 L. Ed. 754):

"The judgment here mentioned comes, as we think, within the language of the statute reasonably construed. The injury (criminal conversation with the wife whose husband had secured judgment against defendant) for which it was recovered is one of the grossest which can be inflicted upon the husband, and the person who perpetrates it knows it is an offense of the most aggravated character; that it is a wrong for which no adequate compensation can be made, and hence personal and particular malice towards the husband as an individual need not be shown for the law implies that there must be malice in the very act itself, and we think Congress did not intend to permit such an injury to be released by a discharge in bankruptcy."

In the case of Flanders v. Mullin, 80 Vt. 124, 127, 66 Atl. 789, 18 Am. Bankr. Rep. 708, 710 (12 Ann. Cas. 1010), Judge Munson said:

"But the petitioner contends that the malice meant by the federal laws is actual malice, and not malice in the broadest sense, recognized in passing upon the right to a close jail certificate, and that a mere adjudication of malice in the words of our statute does not bring the case within the exception relied upon. It seems clear that the federal provision contemplates something more restricted than malice in the broader sense. * * * We have found no satisfactory ground upon which to give a broader meaning to the word as used in the present Bankruptcy Act, although the possibility of this is suggested in Tinker v. Colwell, 193 U. S. 473 [24 Sup. Ct. 505, 48 L. Ed. 754]. * * * The acts there (judgment recovered in case of seduction and criminal conversation) were wrongful in themselves, and afforded a basis for the deduction of malice not found in the charge involved here."

The case of Tinker v. Colwell, supra, makes it clear, however, that there must be something more than mere negligence. Mr. Justice Peckham, speaking for the court, on page 489 (24 Sup. Ct. 510, 48 L. Ed. 754), said:

"It is not necessary in the construction we give to the language of the exception in the statute to hold that every willful act which is wrong implies malice. One who negligently drives through a crowded thoroughfare and negligently runs over an individual would not, as we suppose, be within the exception. True, he drives negligently, and that is a wrongful act; but he does not intentionally drive over the individual. If he intentionally did drive over him, it would certainly be malicious."

In the case at bar, we have a question of pure negligence. There is an entire absence of specific, intentional, or willful wrongdoing. There is no hint of moral turpitude. As the case stands, it is parallel with the illustration given above by Mr. Justice Peckham of one who, while negligently driving through a crowded thoroughfare, runs over an individual, but does not do it willfully. If, in addition to making a fire in the street, a negligent act, the relator intended to burn or in-

jure the plaintiff thereby, the act would then be both willful and malicious and would correspond with the second illustration given by Mr. Justice Peckham. Such an act would come within the exception, and consequently would not be released by a discharge in bankruptcy. By stipulation the testimony taken in the Supreme Court of New Jersey, wherein the relator was defendant and William A. Davenport was plaintiff, constitutes the testimony to be considered by this court upon the hearing on the return of the writ. The testimony shows conclusively that the relator had no malice against the plaintiff or his parents, and the act itself does not show such a "depraved inclination" or "reckless indifference" as will justify the implication of such malice as would bring it within the exception of section 17 (2) of the Bankruptcy Act.

Upon a review of the whole case, I am satisfied that the imprisonment is illegal and the prisoner should be discharged. An order will accordingly be entered.