TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-03-00649-CR






Edward Dwayne Doyle, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF CALDWELL COUNTY, 274TH JUDICIAL DISTRICT


NO.2001-172, HONORABLE JACK H. ROBISON, JUDGE PRESIDING






O P I N I O N




 A jury convicted Edward Dwayne Doyle for the offense of tampering with lottery
equipment enhanced by four prior felony offenses. Tex. Gov't Code Ann. § 466.309 (West 1998). 
Doyle was sentenced to ten years' imprisonment and a $5000 fine. He now challenges the legal
sufficiency of the evidence to support the jury's determination that he "tampered with" lottery
equipment. We find the evidence legally sufficient to support the jury's determination beyond a
reasonable doubt and affirm the judgment of conviction. 


BACKGROUND


 On February 4, 2001, Edward Dwayne Doyle, James Sheppard, and Mary Climer
were passing through Texas on Interstate 10. That evening they stopped at Luv's Truck Stop in
Luling. Doyle and his companions stayed at the truck stop for a few hours, and employees of the
truck stop observed them playing the state lottery scratch-off and Cherry Master vending machines. (1) 
Doyle obtained a large number of Cherry Master tickets which he redeemed for a television and VCR
before he left the store. (2)

 Later that night, the assistant manager discovered that the scratch-off vending
machine was out of lottery tickets. One employee who had worked at the truck stop for four years
recalled that she had never before seen the lottery vending machine entirely sold out. When the
manager opened the machine to restock the tickets, he discovered that the machine had $1261 less
than it should have in view of the number of tickets that were issued that night. The manager also
found a laminated $20 bill attached to a string or strip of tape inside the machine. Due to the
suspicious circumstances, the manager viewed the surveillance camera footage from the previous
night and saw Doyle and his companions redeeming an unusually large number of Cherry Master
tickets. He warned the other employees to notify him if Doyle, Sheppard, or Climer returned to the
store.

 The next day, February 5, Doyle and Sheppard redeemed numerous lottery scratch-off
tickets at two different K-Mart stores in San Antonio. Although they denied purchasing the tickets
at K-Mart, after Sheppard left one of the stores, a clerk discovered that the lottery scratch-off vending
machine had jammed due to some tape in its rollers; the tape was attached to a laminated $1 bill.

 On February 6, Doyle and Sheppard returned to Luv's Truck Stop to play the Cherry
Master machine. Although the Cherry Master machine did not give change, employees of the store
saw Doyle remove both money and tickets from the machine. The employees called the police who
arrived as the pair was leaving. James Stewart, a Luling Police Officer, arrived and observed a large
number of lottery tickets scattered throughout Doyle's vehicle. Doyle was arrested and the
subsequent search of his vehicle also revealed: a laminated $20 and $1 bill in the sun visor, an
envelope containing a $20 bill cut lengthwise and re-taped, a briefcase containing plastic laminate
and fishing wire, several electronic goods of the type available in exchange for Cherry Master tickets,
and numerous lottery tickets in a trash bag.

 The State charged Doyle with the felony offense of tampering with lottery equipment
enhanced by four prior felony convictions. See Tex. Gov't Code Ann. § 466.309 (West 1998); Tex.
Pen. Code Ann. § 12.42 (West 2003). Doyle was convicted by a jury. He pleaded true to the
enhancement allegations, and the court sentenced him to 10 years' imprisonment and a $5000 fine. 
Doyle now challenges the legal sufficiency of the evidence to support the jury's finding that he
"tampered with" lottery equipment. 


DISCUSSION


 When reviewing the legal sufficiency of the evidence, we look at all the evidence in
the light most favorable to the verdict to determine whether a rational finder of fact could have found
the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
319 (1979); Johnson v. State, 23 S.W.3d 1,7 (Tex. Crim. App. 2000). The jury as trier of fact is
entitled to resolve any conflicts in the evidence, evaluate the credibility of the witnesses, and
determine the weight to be given any particular evidence. See Jones v. State, 944 S.W.2d 642,647
(Tex. Crim. App. 1996). 

 Doyle does not challenge the accusation that he used laminated money to obtain
lottery tickets without actually paying for them, but he denies that doing so constitutes "tampering"
within the meaning of section 466.309. Therefore, resolution of Doyle's legal insufficiency
argument depends upon our interpretation of "tampers with" in section 466.309. (3) Doyle argues that
because "tampers with" is not defined in section 466.309, it is ambiguous, and the common usage
of the term is overly broad and could potentially lead to absurd results. He urges us to adopt a
narrow definition of "tampering" which proscribes only that conduct which affects the lottery
equipment's physical integrity or ability to function.

 To support his position that "tampers with" is limited to conduct that disables or
compromises the physical integrity of the lottery equipment, Doyle invokes the canons of statutory
interpretation noscitur a sociis and ejusdem generis for the proposition that the words following
"tampers with" in section 466.309, namely "damages, defaces, or renders inoperable," serve to define
and limit the meaning of "tampers with" for the purposes of the statute. Noscitur a sociis simply
dictates that "the coupling of words together shows that they are to be understood in the same sense. 
And where the meaning of any particular word is doubtful or obscure, . . . the intention of the party
who has made use of it may frequently be ascertained and carried unto effect by looking at the
adjoining words." Neal v. Clark, 95 U.S. 704, 709 (1877). Ejusdem generis, on the other hand, 
proposes that when "particular words of description are followed by general terms the latter will be
regarded as referring to things of a like class with those particularly described." U.S. v. Mescall, 215
U.S. 26, 31 (1909). Although both canons are useful means of clarifying ambiguous statutory
language, neither is applicable here.

 First, with respect to noscitur a sociis, "[t]hat a word may be known by the company
it keeps is . . . not an invariable rule, for the word may have a character of its own not to be
submerged by its association." Russell Motor Car Co. v. United States, 261 U.S. 514, 519 (1923).
Indeed, while "tampers with" is listed with words such as "damages" and "defaces" in section
466.309, its meaning is distinct and thus should not be absorbed or tempered by the other words in
the list. Furthermore, the conduct "renders inoperable," is not necessarily related to "damages" or
"defaces." Tex. Gov't Code Ann. § 466.309(a). It also defines an entirely distinct category of
conduct prohibited by the statute. Some types of conduct may render the lottery equipment
inoperable but may not damage or deface the equipment. For example, by jamming the rollers on
at least one of the lottery machines with tape and removing virtually all of the tickets from another,
Doyle temporarily rendered the lottery equipment inoperable but did not permanently damage it. 
Perhaps more importantly, noscitur a sociis is reserved for language that is ambiguous or obscure,
"[b]ut here the meaning of the words considered severally is not in doubt . . . . The meaning of the
several words, standing apart, being perfectly plain, what should be done is to apply them
distributively. . . . " Russell, 261 U.S. at 520.

 Likewise, ejusdem generis is an inappropriate interpretive device in this statute
because we do not have particular terms that define more general terms. All of the terms used are
equally general. None of them defines or limits any of the others. Instead they each stand as distinct
examples of conduct prohibited by section 466.309 of the Government Code.

 Applying noscitur a sociis or ejusdem generis to narrow the applicability of "tampers
with" would be inconsistent with the legislative history of the statute. Because "tampers with" was
added after the original language, "damages, defaces, or renders inoperable," was drafted, it seems
clear that the legislature meant to expand the scope of proscribed conduct rather than limit it. Given
our commitment to interpret statutory language "according to the rules of grammar and common
usage," Tex. Gov't Code Ann. § 311.011(a) (West 1998), we cannot read "tampers with" as limited
by "damages, defaces, or renders inoperable." Had the legislature intended "damages, defaces, or
renders inoperable" to define "tampers with," rather than including all four terms in a disjunctive
phrase, they would have made it an offense to tamper with lottery equipment by damaging, defacing,
or rendering inoperable. Alternatively, they could have prohibited tampering with lottery equipment
and damaging, defacing, or rendering it inoperable. Instead, the legislature chose to add "tampers
with" to the list of prohibited actions, each of which constitutes an offense under section 466.309.

 Because "tampers with" is not defined by the terms accompanying it in the statute,
we must determine whether Doyle's conduct, inserting a laminated bill into a lottery machine and
then retrieving the bill once the machine issued a ticket, constitutes the offense of tampering with 
lottery equipment. Absent a definition in the statute, a word will have its plain meaning unless
applying that meaning would produce an absurd consequence, or if the language is ambiguous. 
Boykin v. State, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). Whether the evidence establishes that
Doyle tampered with lottery equipment depends upon the precise meaning of "tampers with" in the
context of the statute, but that does not make "tampers with" ambiguous or overly broad, nor would
the common usage of the term lead to absurd results. In fact, because the legislature declined to
provide a definition, we must assume that it intended us to construe the statute using the common
meaning of the term.

 Therefore, we look to the common meaning of "tampers with" to determine whether
Doyle's conduct is the type proscribed by the statute. Black's Law Dictionary defines "tamper" as
"to meddle so as to alter (a thing); esp., to make changes that are illegal, corruptible, or perverting"
and "to interfere improperly; to meddle." Black's Law Dictionary 1468 (7th ed. 1999). Black's
definition seems to describe Doyle's conduct. Although it is arguable whether he altered the machine,
it seems clear that he interfered improperly and meddled with it. He certainly perverted or corrupted
the purpose of the machine by forcing it to issue tickets without collecting funds. Additionally, a
definition of "tampers with" that is broad enough to include manipulation which interferes with the
proper functioning of lottery equipment without physically damaging it is supported by the
legislature's use of the term in other statutes addressing similar offenses.

 "Tamper" is a term used in numerous statutes in Texas, (4) but section 28.03 of the penal
code prohibiting criminal mischief is most analogous to tampering with lottery equipment. Compare
Tex. Gov't Code Ann. § 466.309 (West 1998) with Tex. Pen. Code Ann. § 28.03 (West 2003). 
Section 28.03 is routinely employed in cases where defendants are charged with tampering with gas
or electrical meters, tapping into gas or electrical supplies, or interfering with telephone service. See
Williams v. State, 596 S.W.2d 862 (Tex. Crim. App. 1980) (interfering with telephone service);
Howlett v. State, 994 S.W.2d 663 (Tex. Crim. App. 1999) (diverting gas from flowing through meter
gauge); Robertson v. State, 888 S.W.2d 493 (Tex. App.--Amarillo 1994, pet ref'd) (diverting
electricity from electrical wires); Edmonson v. State, 747 S.W.2d 8 (Tex. App.--El Paso 1988, pet 
 

dangerous drugs), 171.014 (informational materials), 242.852 (criminal offense), 382.202 (vehicle
emissions inspection), 382.207 (inspections stations; quality control audits), 431.323 (circumstances
under which donated drugs may be accepted and dispensed), 481.159 (disposition of controlled
substance property or plant) (West 2001), §§ 504.002 (offense: use of equipment), 825.008
(tampering with traps; criminal penalty), 841.082 (commitment requirements) (West 2003); Tex. Nat.
Res. Code Ann §§ 85.385 (administrative penalty), 85.389 (criminal penalty), 88.092 (prohibited
interference with access and inspection), 91.143 (false applications, reports, and documents and
tampering with gauges), 201.041 (vandalism) (West 2001); Tex. Occ. Code Ann. §§ 165.154
(tampering with governmental record; perjury offenses), 562.1085, (unused drugs returned by certain
pharmacists), 1805.053 (serial number) (West 2003); Tex. Pen. Code Ann. §§ 22.09 (tampering with
consumer product), 28.03 (criminal mischief), 28.07 (interference with railroad property), 31.11
(tampering with identification numbers), 31.12 (theft of or tampering with multichannel video or
information services), 37.09 (tampering with or fabricating physical evidence), 37.10 (tampering with
governmental record) (West 2003); Tex. Transp. Code Ann. §§ 472.021 (tampering with warning
devices); 521.2475 (ignition interlock device evaluation), 522.030 (content of license), 548.603
(fictitious or counterfeit inspection certificate or insurance document), 727.002 (tampering with
odometer) (West 1999); Tex. Water Code Ann. §§ 7.148 (failure to properly use pollution control
measures), 7.162 (violations relating to hazardous waste), 7.181 (improper use of monitoring device)
(West 2000); Tex. Rev. Civ. Stat. Ann. art. 1446a, § 5 (disruption of gas, electric, or water by
picketing, threats, or intimidation) (West Supp. 2003); Tex. R. Jud. Admin. 12, reprinted in Tex.
Gov't Code Ann., tit. 2, subtit. F app. (public access to judicial records) (West 1998); Tex. Crim.
Proc. Ann. art. 18.21, § 6 (pen registers and trap and trace devices; access to stored communications;
mobile tracking devices) (West 1977), arts. 49.05(f) (time and place of inquest; removal of property
and body from place of death ), 49.22(c) (sealing premises of deceased), 64.03(a)(1)(A)(ii)
(requirements; testing) (West 1979).


ref'd) (diverting gas from public gas line). In most cases, the defendant has not damaged or destroyed
the meter devices, cables, pipes, or other utility equipment but has interfered with the proper
functioning of the equipment by accessing electricity or gas without paying for it. Nevertheless, those
defendants who access public utilities while avoiding proper charges have unlawfully "tampered with
the tangible property of the owner" in violation of section 28.03, whether or not they cause physical
damage to any equipment.

 As used in section 28.03, "tampers with" includes conduct which does not permanently
damage or destroy property. (5) First, subsection (a) of the criminal mischief statute lists "tampering
with property" and "damaging or destroying property" as separate methods of committing an offense. 
See Tex. Pen. Code Ann. § 28.03(a)(1) and (2) (West 2003). Furthermore, the criminal mischief
statute gives three examples of conduct that constitutes tampering:


[I]t shall be presumed that a person who is receiving the economic benefit of public
communications, public water, gas, or power supply, has knowingly tampered with
the tangible property of the owner if the supply has been: (1) diverted from passing
through a metering device; or (2) prevented from being correctly registered by a
metering device; or (3) activated by any device installed to obtain public
communications, public water, gas, or power supply without a metering device. 



Tex. Pen. Code Ann. § 28.03(c) (West 2003). The conduct reflected in each of the three examples
avoids payment for a benefit received, but does not necessarily result in permanent damage or
physical alteration. Thus, for the purposes of section 28.03(c), tampering includes conduct which
does not disable or destroy the equipment, but does subvert the purpose of the device--to assess
charges for services rendered and products consumed. 

 Case law applying section 28.03 confirms a broad construction of the term "tampers
with." In Howlett v. State, Howlett diverted gas into his home before it went through the metering
device. 994 S.W.2d at 664. Similarly, in Robertson v. State, Robertson tapped directly into the
electrical lines running near his house in order to avoid being charged for electricity by his meter. 
888 S.W.2d at 494. Doyle's conduct resembles, in principle, the actions of Howlett and Robertson. 
Preventing a meter from properly registering use to assess charges is indistinguishable from inserting
trick money to obtain lottery tickets without actually paying for them. In another analogous case,
Williams v. State, Williams interrupted another man's telephone service by tampering with the wires. 
596 S.W.2d at 864. Drawing on the practice commentary accompanying section 28.03, the court of
criminal appeals construed "tampers with" to include "conduct that falls short of damaging the
property but nevertheless interferes with the owner's proprietary rights or abuses the property in a
way that diminishes its value." Id. at 865. The court of criminal appeals' definition of "tampers
with" also describes Doyle's conduct. Although he did not permanently damage the lottery machine,
he interfered with the proprietary rights of Luv's Truck Stop and the lottery commission and
diminished the machine's value. By taking virtually all of the tickets without paying, he made it
impossible for paying customers to buy tickets for several hours. Without tickets to sell, the lottery
machine is virtually worthless. Though the machine was not physically damaged, Doyle's conduct
interfered with the owners' proprietary rights and diminished the value of the machine, fulfilling the
definition of "tampers with" in Williams. Id. 

 By including "tampering" and "rendering inoperable" as prohibited conduct, the
legislature sought to deter more than physical damage of lottery equipment; it also wanted to protect
the integrity of the lottery itself. Although Doyle did not compromise the physical integrity of the
lottery machine, the effect is the same as if he pried the machine open and took the tickets. The
purpose of lottery machines is to issue tickets in exchange for money, which translates into revenue
for the State of Texas. We hold that meddling with lottery machines in a way that subverts that
process is tampering with lottery equipment in violation of Texas Government Code section 466.309
regardless of whether any lasting or physical alteration occurs. Furthermore, we hold that Doyle's
conduct rendered the lottery equipment inoperable by jamming the rollers with tape and emptying
all the tickets in the machine. We overrule Doyle's sole point of error. 


CONCLUSION


 Under the common usage definition of "tampers with" and "renders inoperable," we
find the evidence legally sufficient and affirm the judgment of conviction.



 

 Bea Ann Smith

Before Justices Kidd, B. A. Smith and Pemberton

Affirmed

Filed: October 7, 2004

Publish

1. Cherry Master is not a state lottery game. It is a machine owned by a private company. 
Points awarded for playing are translated into tickets, which can ultimately be redeemed for
merchandise.
2. According to the store manager, it is very difficult to accumulate a large number of tickets
from the Cherry Master machine.
3. Texas Government Code section 466.309 provides in relevant part:


 (a) A person commits an offense if the person intentionally or knowingly tampers with,
damages, defaces, or renders inoperable any vending machine, electronic computer
terminal, or other mechanical device used in a lottery game. . . .
4. See Tex. Bus. & Com. Code Ann. § 17.46 (deceptive trade practices unlawful) (West
2002); Tex. Fam. Code Ann.§ 6.501(temporary restraining order) (West 1998); Tex. Gov't Code
Ann. §§ 62.003 (construction and security of jury wheel); 466.309 (tampering with lottery
equipment) (West 1998); Tex. Health & Safety Code Ann. §§ 142.0063 (possession of certain
5. Texas Penal Code section 28.03 provides in relevant part:


 (a) A person commits an offense if, without the effective consent of the owner:


 (1) he intentionally or knowingly damages or destroys the tangible property of the
owner;


 (2) he intentionally or knowingly tampers with the tangible property of the owner
and causes pecuniary loss or substantial inconvenience to the owner or a third
person; . . . .


 * * *


 (c) For the purposes of this section, it shall be presumed that a person who is receiving
the economic benefit of public communications, public water, gas, or power supply,
has knowingly tampered with the tangible property of the owner if the communication
or supply has been:


 (1) diverted from passing through a metering device; or 


 (2) prevented from being correctly registered by a metering device; or


 (3) activated by any device installed to obtain public communications, public water,
gas, or power supply without a metering device.