# United States Court of Appeals
## For the First Circuit

No. 14-2058

IN RE: CARRIE D. LAWSON,

Debtor

-------------------

SAUER INCORPORATED, d/b/a Sauer Southeast,

Appellant,

v.

CARRIE D. LAWSON,

Appellee.

APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Diane Finkle, U.S. Bankruptcy Judge]

Before

Lynch, Thompson, and Kayatta,
Circuit Judges.

Michael J. Jacobs and LaPlante Sowa Goldman, on brief for appellant.

Christopher M. Lefebvre, with whom Claude Lefebvre, Christoper Lefebvre, P.C., John Boyajian, and Boyajian, Harrington, Richardson & Furness were on brief, for appellee.

July 1, 2015

**LYNCH**, **Circuit Judge**.    Sauer Incorporated ("Sauer") filed an adversary proceeding objecting to the discharge of a debt owed by Carrie Lawson ("Ms. Lawson") that she allegedly obtained as part of a fraudulent scheme to prevent Sauer from collecting a previous judgment from her father, James Lawson.  See 11 U.S.C. §§ 523(a)(2)(A), 523(a)(6).  The bankruptcy court dismissed for failure to state a claim on the ground that a debt for value "obtained by . . . actual fraud" under § 523(a)(2)(A) is limited to debts for value obtained through fraudulent misrepresentations. The court felt First Circuit precedent in the line of Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir. 1997), required such a conclusion.  See Sauer, Inc. v. Lawson (In re Lawson), 505 B.R. 117, 125-26 (Bankr. D.R.I. 2014) (citing McCrory v. Spigel (In re Spigel), 260 F.3d 27, 32 (1st Cir. 2001); Palmacci, 121 F.3d 781); see also id. (citing Field v. Mans, 516 U.S. 59 (1995)).

On direct appeal, we are asked to resolve this narrow but significant issue of whether a debt that is not dischargeable in Chapter 13 bankruptcy as a debt for money or property "obtained by . . . actual fraud" extends beyond debts incurred through fraudulent misrepresentations to also include debts incurred as a result of knowingly accepting a fraudulent conveyance that the transferee knew was intended to hinder the transferor's creditors.

- 3 -

See 11 U.S.C. § 523(a)(2)(A).  We join the Seventh Circuit in concluding that it does.  See McClellan v. Cantrell, 217 F.3d 890 (7th Cir. 2000).[1]

Having adopted this new standard, we vacate and remand for further proceedings consistent with this opinion.  We decline to reach the issue of the adequacy of Sauer's pleadings of actual fraud under Rule 9(b), and the possibility of amendment if inadequate.  Because we have adopted a new standard, the bankruptcy court should address these issues in the first instance.  Cf. N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 16-18 (1st Cir. 2009) (Boudin, J.).

I.

We recount the facts as alleged in Sauer's First Amended Complaint, accepting them as true and drawing "all reasonable inferences" in Sauer's favor.  See Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).  In brief, Sauer alleges that Ms. Lawson incurred the debt at issue by knowingly receiving a fraudulent conveyance from her father, James, that was designed to

---

[1] We are aware the Fifth Circuit, in a post-argument decision, has disagreed with McClellan and our analysis here.  See Husky Int'l Elec., Inc. v. Ritz (In re Ritz), -- F.3d --, 2015 WL 3372812 (5th Cir. May 22, 2015).

prevent Sauer from collecting a judgment against him.  The details are as follows.

In January 2007, Sauer sued James in Providence Superior Court based on their previous business dealings.  Three years later, on February 5, 2010, the Superior Court found those transactions to be fraudulent, and awarded Sauer a judgment against James in the amount of $168,351.59, including punitive damages.

Just before the judgment was entered, Ms. Lawson had formed a shell entity, Commercial Construction M&C, LLC ("Commercial Construction").[2]  Upon entry of judgment, James transferred $100,150 to Commercial Construction, allegedly to impede Sauer's collection.  Commercial Construction is owned by Ms. Lawson, but controlled by James.[3]

Ms. Lawson then transferred $80,000 of the $100,150 from Commercial Construction to herself sometime over the course of the following year, from February 2010 through early 2011.  In March 2011, James filed for Chapter 13 bankruptcy.

---

[2] Although the complaint does not allege when Ms. Lawson formed Commercial Construction, Ms. Lawson's affidavit, which she appended to her motion to dismiss Sauer's First Amended Complaint, indicates that she formed the entity in January 2010.

[3] The present ownership of Commercial Construction is a matter of some dispute, but it does not affect our analysis.

Pursuant to the Rhode Island Uniform Fraudulent Transfer Act, R.I. Gen. Laws § 6-16-1 et seq. ("UFTA"), Sauer traced portions of its original judgment against James first to Commercial Construction, and then to Ms. Lawson. The Providence Superior Court found these transfers to be fraudulent under the UFTA, and issued executions against both Commercial Construction and Ms. Lawson for the full amounts transferred ($100,150 and $80,000, respectively). The latter judgment entered against Ms. Lawson is the debt at issue.

Ms. Lawson filed for Chapter 13 bankruptcy the same month that the Providence Superior Court issued the execution against her, in March 2013. Sauer initiated this adversary proceeding in June 2013, objecting to the discharge of this debt under § 523(a)(2)(A) as being for money "obtained by . . . actual fraud."[4] In particular, Sauer alleged that because Ms. Lawson "knowingly receiv[ed]" the fraudulent transfer and acted in a "willful and malicious" manner toward Sauer, her acceptance of the fraudulent conveyance constitutes actual, not merely constructive, fraud.[5]

_____

[4] Sauer also objected to discharge under § 523(a)(6), but the bankruptcy court correctly held that this provision does not bar Chapter 13 discharge. Sauer, 505 B.R. at 119 n.4; see 11 U.S.C. § 1328(a)(2).

[5] We do not address the adequacy of this pleading under the heightened pleading standard of Rule 9(b), but assume its adequacy

- 6 -

The bankruptcy court dismissed Sauer's adversary proceeding. The court reasoned that it was constrained by First Circuit and Supreme Court precedent to find that a misrepresentation is a required element of "actual fraud" under § 523(a)(2)(A). See Sauer, 505 B.R. at 118, 125-26 (citing Field, 516 U.S. 59; Spigel, 260 F.3d at 32). Because Sauer concededly could not allege that Ms. Lawson had made a misrepresentation, Sauer could not establish that § 523(a)(2)(A) barred discharge of Ms. Lawson's debt. See id. at 126.

Sauer appealed to the Bankruptcy Appellate Panel and, shortly thereafter, petitioned for direct appeal to the First Circuit. See 28 U.S.C. § 158(d)(2). The Panel granted certification on the ground that the order "involves a matter of public importance," 28 U.S.C. § 158(d)(2)(A)(i), and agreeing, we granted authorization.

## II.

The sole issue on appeal is whether the bankruptcy court erred in concluding that "a misrepresentation by a debtor to a creditor is an essential element of establishing a basis for the nondischarge of a debt under § 523(a)(2)(A)." Sauer, 505 B.R. at

---

for purposes of resolving the appeal. Cf. N. Am. Catholic Educ., 567 F.3d at 16.

- 7 -

118.  This is a question of law, which we review de novo.  See N. Am. Catholic Educ., 567 F.3d at 12; United States v. Nippon Paper Indus. Co., 109 F.3d 1, 3 (1st Cir. 1997).

A.    The Fraud Exception of § 523(a)(2)(A)

The Bankruptcy Code aims to strike a balance between providing debtors with a fresh start by discharging debts upon plan confirmation, and avoiding abuse of the system.  See Spigel, 260 F.3d at 31-32.  To this end, the Code exempts from discharge certain types of debt in an attempt to "limit[] th[e] opportunity [for discharge] to the 'honest but unfortunate debtor.'"  Id. at 32 (second and third alteration in original) (quoting Brown v. Felsen, 442 U.S. 127, 128 (1979)).  Such exceptions are "narrowly construed . . . and the claimant must show that its claim comes squarely within an [enumerated] exception."  Id. (first alteration in original) (quoting Century 21 Balfour Real Estate v. Menna (In re Menna), 16 F.3d 7, 9 (1st Cir. 1994)).

This case concerns an exemption to Chapter 13 discharge. Although "discharge under Chapter 13 'is broader than the discharge received in any other chapter,'" Chapter 13 still "restricts or prohibits entirely the discharge of certain types of debts." United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 268 (2010) (quoting 8 Collier on Bankruptcy ¶ 1328.01 (rev. 15th ed.

- 8 -

2008)). As relevant here, Chapter 13 does not discharge any debt "for money . . . to the extent obtained by . . . false pretenses, a false representation, or actual fraud . . . ." 11 U.S.C. § 523(a)(2)(A) (emphasis added); id. § 1328(a)(2) (making § 523(a)(2)(A) expressly applicable to Chapter 13).

Although many courts have "assume[d] that fraud [under this provision] equals misrepresentation," McClellan, 217 F.3d at 892-93 (collecting cases), it remains an open question in this circuit whether "actual fraud" includes fraud effected by means other than fraudulent misrepresentation, such as through schemes of fraudulent conveyance, Spigel, 260 F.3d at 32-33 n.7 (expressly declining to reach the issue).[6]

---

[6] This surprising gap has an explanation:

Until 1970, the courts tasked with enforcing a creditor's claim also determined whether the judgment thereby rendered was nondischargeable under the fraud exception. See Brown, 442 U.S. at 129-30 (citing Section 17 of the former Bankruptcy Act) ("Typically, that court was a state court."). This proved problematic: creditors were frequently successful in obtaining nondischargeable default judgments in state courts under the exception. Id. at 135-36. To avoid creditor abuse, Congress amended the statute to require creditors seeking to bar discharge under the fraud exception to file directly with the bankruptcy court. See id. But in the cases since, we did not reach the issue of whether "actual fraud" is limited to fraud effected by misrepresentation because misrepresentation was the only type of fraud charged. See McClellan, 217 F.3d at 892-93 (collecting cases); see, e.g., Field, 516 U.S. at 70; Palmacci, 121 F.3d 781; see also, e.g., Anastas v. Am. Sav. Bank (In re Anastas), 94 F.3d 1280, 1285 (9th Cir. 1996) (finding an "implied representation of

an intent" to repay a credit card charge (emphasis added)); <u>Rembert</u> v. <u>AT&T Universal Card Servs., Inc.</u> (<u>In re Rembert</u>), 141 F.3d 277, 281 (6th Cir. 1998) (same); <u>AT&T Universal Card Servs.</u> v. <u>Mercer</u> (<u>In re Mercer</u>), 246 F.3d 391, 403 (5th Cir. 2001) (en banc) (noting that implying misrepresentation under the <u>Palmacci</u> test is "appropriate for determining card-dischargeability because . . . card-use lends itself to that analysis").

Even so, Ms. Lawson argues -- and the bankruptcy court found -- that our inquiry is foreclosed by controlling Supreme Court and First Circuit precedent in <u>Field</u> v. <u>Mans</u>, 516 U.S. 59 (1995), and <u>In re Spigel</u>, 260 F.3d 27 (1st Cir. 2001). But these cases are inapposite.

<u>Field</u> did not address whether "actual fraud" is limited to fraud based on fraudulent misrepresentation. <u>Field</u>, 516 U.S. at 61. Rather, the Court there addressed the requirements when the actual fraud alleged <u>was</u> fraudulent misrepresentation. <u>See</u> <u>id.</u> (addressing the type of reliance required). At no point does the Supreme Court state or even consider that "actual fraud" could be limited to fraudulent misrepresentation. To the contrary, the Court directs us to rely upon the Second Restatement of Torts which, as will be discussed, identifies multiple forms of "fraud." <u>See</u> <u>Field</u>, 516 U.S. at 70; Restatement (Second) of Torts § 871 cmts., index (1977); <u>cf.</u> <u>In re Mercer</u>, 246 F.3d at 403 (recognizing that the Restatement "does <u>not</u> define 'fraud'" but discusses particular forms thereof).

<u>Spigel</u>, far from foreclosing our inquiry, expressly left it open. <u>See</u> <u>Spigel</u>, 260 F.3d at 32-33 n.7. That case did not concern whether a misrepresentation was required, but the relationship between the "fraudulent conduct" and the debt. <u>Id.</u> at 32-35 (holding that the debt must be a "direct result" of fraudulent conduct intended to swindle the relevant creditor). Not only did we decline to reach the question of the scope of "actual fraud," we expressed doubt that the <u>Palmacci</u> test for debt obtained through fraudulent misrepresentations was the "exclusive test" for nondischargeability under § 523(a)(2)(A). <u>Id.</u> at 32-33 n.7 (citing <u>McClellan</u>, 217 F.3d at 892-95); <u>cf.</u> <u>In re Mercer</u>, 246 F.3d at 403 & n.3 (noting disagreement).

The Supreme Court has directed us that in construing the meaning of "actual fraud" under this provision, we are to rely on the common law "concept of 'actual fraud' as it was understood in 1978 when that language was added to § 523(a)(2)(A)." Field, 516 U.S. at 70. "Then, as now, the most widely accepted distillation of the common law of torts was the Restatement (Second) of Torts (1976), published shortly before Congress passed the Act." Id. Accordingly, we look to the same Restatement as relied upon in Field.

That Restatement recognizes several types of "fraud," including both fraudulent misrepresentations and "fraudulent interference with [property rights]," a tort that is broader than misrepresentation itself. See Restatement (Second) of Torts, index, "Fraud" (1977); see also id. § 871 ("One who intentionally deprives another of his legally protected property interest or causes injury to the interest is subject to liability to the other if his conduct is generally culpable and not justifiable under the circumstances."). The comments to the relevant Restatement provision, § 871, make clear that this includes fraudulent conveyance, like that alleged here. Id. § 871 cmt. a ("[T]he rule applies when title to land has been obtained by fraud . . . and has been transferred to one other than a bona fide purchaser, in

- 11 -

which case, until its sale by the transferee, the original owner's sole redress against the transferee is by an action seeking its recovery."). That is, the common law concept of "fraud" as distilled by the Restatement to which the Court directs us extends beyond fraudulent misrepresentations to at least include fraudulent conveyances. See id.; see also id. § 871 cmt. e.

This comports with other examples of the common understanding of "fraud." See McClellan, 217 F.3d at 893 ("No learned inquiry into the history of fraud is necessary to establish that [fraud] is not limited to misrepresentations and misleading omissions."). As the leading treatise on bankruptcy explains, "[a]ctual fraud, by definition, consists of any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another . . . ." 4 Collier on Bankruptcy ¶ 523.08[1][e] (A.N. Resnick & H.J. Sommer, eds., 16th ed. 2015). This "generic term" has frequently been used to "embrace[] all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth." McClellan, 217 F.3d at 893 (quoting Stapleton v. Holt, 250 P.2d 451, 453-54 (Okla. 1952)). And, as relevant here, "when a debtor transfers property to a third party without adequate

- 12 -

consideration" to hinder her creditors, this "is deemed fraud on [her] creditors." Id. at 894 (collecting cases); see also, e.g., R.I. UFTA, R.I. Gen. Laws § 6-16-1 et seq. (providing remedies for fraudulent conveyances); Spaziano v. Spaziano, 410 A.2d 113, 114-15 (R.I. 1980); Jorden v. Ball, 258 N.E.2d 736, 737 (Mass. 1970).[7]

We adopt this common law understanding and hold that "actual fraud" under § 523(a)(2)(A) is not limited to fraud effected by misrepresentation. See Field, 516 U.S. at 73-74 (applying the "established practice of finding Congress's meaning in the generally shared common law" to § 523(a)(2)(A)). Rather, we hold that "actual fraud" includes fraudulent conveyances that are "intended . . . to hinder [the relevant] creditors." McClellan, 217 F.3d at 894. Consistent with our precedents, our holding is limited to cases of actual, as opposed to merely constructive, fraud. See Spigel, 260 F.3d at 32 ("[W]e have said

_____

[7] Even the early Bankruptcy Acts characterized "fraudulent conveyances" as a form of "fraud." See, e.g., Bankruptcy Act of 1867, ch. 176, § 35, 14 Stat. 517, 534 ("[I]f such sale, assignment, transfer, or conveyance [made to evade attachment in bankruptcy] is not made in the usual and ordinary course of business of the debtor, the fact shall be prima facie evidence of fraud." (emphasis added)); Bankruptcy Act of 1898, ch. 541, § 29(b), 30 Stat. 544, 554 ("A person shall be punished . . . upon conviction of the offense of having knowingly and fraudulently . . . received any material amount of property from a bankrupt after the filing of the petition, with the intent to defeat this Act . . . ." (emphasis added)).

- 13 -

that the statutory language does not 'remotely suggest that nondischargeability attaches to any claim other than one which arises as a direct result of the debtor's [fraudulent conduct].'" (quoting Century 21, 16 F.3d at 10)); Palmacci, 121 F.3d at 788 (emphasizing that § 523(a)(2)(A) "requires a showing of actual or positive fraud, not merely fraud implied by law" (quoting Anastas v. Am. Sav. Bank (In re Anastas), 94 F.3d 1280, 1286 & n.3 (9th Cir. 1996))).  That is, the debtor-transferee must herself be "guilty of intent to defraud" and not merely be the passive recipient of a fraudulent conveyance. See McClellan, 217 F.3d at 894 (noting that fraud is "constructive if the only evidence of it is the inadequacy of the consideration").  Such intent may be inferred from her acceptance of a transfer that she knew was made with the purpose of hindering the transferor's creditor(s), but it may not be implied as a matter of law. See Neal v. Clark, 95 U.S. 704, 707-09 (1877) (distinguishing "actual fraud" from "constructive fraud" which "may exist without the imputation of bad faith or immorality").

Our reading is confirmed by the structure of the text and the legislative history.  "'[A]ctual fraud' [was] added as a ground for exception from discharge" under § 523(a)(2)(A) in 1978. S. Rep. No. 95-989, at 78 (1978); H.R. Rep. No. 95-595, at 364

(1977). That provision now "explicitly lists both 'actual fraud' and 'false representations' as grounds for denying a discharge." Spigel, 260 F.3d at 33 n.7. We agree with the Seventh Circuit that this distinction must have meaning, and that the most obvious meaning is the one that comports with common law understanding: "actual fraud is broader than misrepresentation." McClellan, 217 F.3d at 893.

Indeed, this is confirmed by the Legislative Statements concerning the change, which reveal that the drafters specifically contemplated not only a broader reading of "actual fraud," but that debt incurred through (actually) fraudulent conveyances would be barred from discharge under § 523(a)(2)(A). The Legislative Statement concerning § 523(a)(2)(A) is express that the addition "is intended to codify current case law, [like] Neal v. Clark, 95 U.S. 704 (18[7]7)." See 11 U.S.C. § 523, Legislative Statements (explaining that § 523(a)(2)(A) is limited to "actual or positive fraud rather than fraud implied by law"). That case, Neal v. Clark, presumed that the Bankruptcy Code exempted from discharge as a "debt created by . . . fraud" at least some debts incurred through receipt of a fraudulent conveyance. See Neal, 95 U.S. at 706-09 (holding that debt created through receipt of a fraudulent conveyance must be actual fraud, not merely constructive fraud, to

- 15 -

bar from discharge in bankruptcy); Bankruptcy Act of 1867, ch. 176, § 33, 14 Stat. 517, 533; cf. id. ch. 176, § 35, 14 Stat. at 534.[8]

"The history of the fraud exception reinforces our reading of § 523(a)(2)(A)." Cohen v. de la Cruz, 523 U.S. 213, 221 (1998). The bankruptcy practices at issue in Neal and codified by § 523(a)(2)(A) concerned Section 33 of the Bankruptcy Act of 1867, which barred debts "created by . . . fraud." Bankruptcy Act of 1867, ch. 176, § 33, 14 Stat. at 533. The Bankruptcy Act of 1898 similarly prohibited discharge of debts that "are judgments in actions for frauds, or obtaining property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another" under Section 17(a)(2).[9]

---

[8] The Supreme Court in Neal was construing the term "fraud" as it appeared in Section 33 of the Bankruptcy Act of 1867, ch. 176, § 33, 14 Stat. at 533. That provision provided in relevant part:

> [N]o debt created by the fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in any fiduciary character, shall be discharged under this act . . . .

Id. These various bars to discharge have been expanded upon and now appear as enumerated exceptions.

[9] Section 17(a)(4) of the Bankruptcy Act of 1898 also prohibited discharge of debts "created by [debtor's] fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity." 30 Stat. at 550-51. This appears to be the precursor to § 523(a)(4) of the modern Bankruptcy Code, which prohibits discharge (including Chapter 13 discharge) of debts "for fraud or defalcation while acting in a fiduciary

- 16 -

Bankruptcy Act of 1898, ch. 541, § 17(a)(2), 30 Stat. 544, 550; <u>Cohen</u>, 523 U.S. at 221. Subsequent amendments retained the "willful and malicious injuries" language until 1970, when "willful and malicious conversion of the property of another" was substituted. <u>See</u> 11 U.S.C. § 35(a)(2) (1976); Act of Oct. 19, 1970, Pub. L. No. 91-467, sec. 5-6, §§ 17(a)(2), 17(a)(8), 84 Stat. 990, 992. This substituted language preserved the breadth of the fraud exception articulated in Section 17(a)(2), the predecessor of § 523(a)(2)(A).[10] <u>Cf.</u> <u>Black's Law Dictionary</u> 406 (10th ed. 2014) (defining "conversion" as "an act or series of acts of willful interference, without lawful justification, with an item of property in a manner inconsistent with another's right, whereby that other person is deprived of the use and possession of the property").

---

capacity, embezzlement, or larceny." <u>See</u> 11 U.S.C. §§ 523(a)(4), 1328(a)(2).

[10] This "willful and malicious conversion" is distinct from the exception to discharge now codified at § 523(a)(6) for "willful and malicious injury by the debtor to another entity or to the property of another entity." <u>See</u> 11 U.S.C. § 35(a)(8) (1976) (barring discharge of debts that "are liabilities for willful and malicious injuries to the person or property of another other than conversion <u>as excepted</u> under clause (2) of this subdivision" (emphasis added)).

We "will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." Cohen, 523 U.S. at 221 (internal quotation marks and citation omitted). The alteration of this language in 1978 "in no way signals an intention to narrow the established scope of the fraud exception along the lines suggested by" Ms. Lawson, nor have the parties identified anything in the legislative history that would suggest such a change. See id. at 221-22. Rather, "[§] 523(a)(2)(A) continues the tradition" of "affording relief only to an 'honest but unfortunate debtor'" by excepting from discharge any debt obtained by "'false pretenses, a false representation, or actual fraud.'" See id. at 217-18 (quoting Grogan v. Garner, 498 U.S. 279, 287 (1991); 11 U.S.C. § 523(a)(2)(A)). We hold that the fraud exception to discharge codified at § 523(a)(2)(A) continues to bar from discharge debts incurred through knowing and intentional receipt of fraudulent conveyances as it has since 1867. Cf. 43 R.E. Williams, Am. Jur. Proof of Facts § 13 (3d ed. 2015) ("[T]here is a great deal of continuity between the former Bankruptcy Act and the 1978 Bankruptcy Code, and between common-law fraud and

nondischargeability under Code § 523(a)(2).  Even the language of

the statute is continuous.").[11]

B.   Declining to "Shoehorn" Fraudulent Conveyance into
     § 523(a)(6)

Ms. Lawson next argues that because her bankruptcy case

arises under the more forgiving provisions of Chapter 13, not

Chapter 7, we should avoid construing § 523(a)(2)(A) to "extend"

beyond fraud effected by misrepresentation.

Her argument, charitably read, begins with the assertion

that Ms. Lawson's alleged conduct more readily falls within the

nondischargeability provision of 11 U.S.C. § 523(a)(6).[12]  Cf.

McClellan, 217 F.3d at 896 (Ripple, J., concurring).  Because that

provision bars discharge of any debt "for willful and malicious

---

[11] This treatise is another example of one that appears to assume, as many cases do, that § 523(a)(2)(A) requires a misrepresentation.  It does not directly address the distinction between "false pretenses, [and] false representation[s]" and "actual fraud," or discuss the McClellan standard except in passing.  See, e.g., id. § 13; but see id. (collecting cases following McClellan without expressly identifying the issue).

[12] To the extent Ms. Lawson argues that we should read the same provision differently depending on the type of bankruptcy proceeding, her argument is a nonstarter.  Chapter 13 provides a broader discharge than Chapter 7 because fewer exemptions have been made applicable, not because those that are should be construed more narrowly.  See 11 U.S.C. § 1328(a)(2) (making § 523(a)(2) expressly applicable as a reason to bar discharge of certain debts in a Chapter 13 proceeding while rendering inapplicable other reasons for denying discharge under § 523(a)).

- 19 -

injury by the debtor to another entity," 11 U.S.C. § 523(a)(6), Ms. Lawson argues that it "provides a far more direct avenue for dealing with a situation such as [this]" where the debtor allegedly accepted a fraudulent conveyance specifically to impede the injured party's attempt to collect from another. McClellan, 217 F.3d at 896 (Ripple, J., concurring). As Judge Ripple observed, § 523(a)(6) has been used to prevent discharge of exactly this sort. See id. at 898 (discussing Murray v. Bammer (In re Bammer), 131 F.3d 788 (9th Cir. 1997) (en banc)); but see id. at 899 n.1 (conceding that the Ninth Circuit later limited its holding where the fraudulent transferee filed for bankruptcy before the plaintiff, who did not have a security interest, obtained a judgment against the transferee for the transfer).

Against this backdrop, Ms. Lawson argues that the distinction between Chapter 13 and Chapter 7 discharge provides a reason to follow Judge Ripple's suggested construction, and to find the alleged conduct to be covered under § 523(a)(6), not § 523(a)(2). This is because Chapter 13, which provides for a broader discharge than Chapter 7, does not bar the discharge of debts specified in § 523(a)(6), except in limited circumstances

not relevant here.[13]  See 11 U.S.C. § 1328(a)(2); United Student Aid Funds, 559 U.S. at 268 ("[D]ischarge under Chapter 13 'is broader than the discharge received in any other chapter.'" (quoting 8 Collier on Bankruptcy ¶ 1328.01 (rev. 15th ed. 2008))).

This argument is foreclosed by the statutory history of § 523(a)(6), "the historical pedigree of the fraud exception [in § 523(a)(2)(A)], and the general policy underlying the exceptions to discharge."  See Cohen, 523 U.S. at 223.  We begin with the history of the proposed alternative, § 523(a)(6).

The discharge of debts for "willful and malicious injuries to the person or property of another" was originally included in the fraud exception of Section 17(a)(2).  That changed in 1970, when the provision that is now codified in § 523(a)(6) was added to the statute as Section 17(a)(8).  See Act of Oct. 19, 1970, sec. 5-6, §§ 17(a)(2), 17(a)(8), 84 Stat. at 992 (formerly codified at 11 U.S.C. § 35(a)(8) (1976)).

However, that amendment did not completely remove all "willful and malicious injuries" to a creditor's property from the scope of the fraud exception in Section 17(a)(2).  Rather, Section 17(a)(2) continued to bar discharge of liabilities "for willful

---

    [13] See 11 U.S.C. § 1328(b), (c) (providing for a hardship discharge except for "any debt" specified in § 523(a)).

and malicious conversion of the property of another," like willful and malicious receipt of a fraudulent conveyance. See Black's Law Dictionary 406 ("[C]onversion . . . . include[s] such acts as taking possession, refusing to give up on demand, disposing of the goods to a third person, or destroying them." (quoting W. Geldart, Introduction to English Law 143 (D.C.M. Yardley ed., 9th ed. 1984))); cf. Neal, 95 U.S. 704. By contrast, the new provision that preceded § 523(a)(6) barred discharge of debts that "are liabilities for willful and malicious injuries to the person or property of another other than conversion as excepted under clause (2) of this subdivision." See 11 U.S.C. § 35(a)(8) (1976) (emphasis added).

The notes to the re-codification of these provisions under the Bankruptcy Reform Act of 1978 do not clearly indicate an intention to alter their relative scope with respect to the means by which fraud may be perpetrated. "[A]ctual fraud" was added to § 523(a)(2)(A) expressly for the purpose, as discussed, of "codify[ing] current case law" concerning fraud. See 11 U.S.C. § 523, Legislative Statements (citing Neal, 95 U.S. 704 (holding that receipt of a fraudulent conveyance must "involv[e] . . . intentional wrong" to be nondischargeable)). Although there is some ambiguity about which "willful and malicious conversion[s]"

- 22 -

are subsumed under § 523(a)(6) rather than § 523(a)(2),[14] there is not "a clear indication that Congress intended . . . a departure" that would limit the means by which fraud might be perpetrated for purposes of § 523(a)(2)(A). See Cohen, 523 U.S. at 221-22. Accordingly, we decline to find one. See id. (noting that absent such an indication, we should not "read the Bankruptcy Code to erode past bankruptcy practice").

The continued inclusion of (actual) fraudulent conveyance within § 523(a)(2) is consistent with Congress's "conclu[sion] that preventing fraud is more important than letting defrauders start over with a clean slate." McClellan, 217 F.3d at 893 (quoting Mayer v. Spanel Int'l, Ltd. (In re Mayer), 51 F.3d 670, 674 (7th Cir. 1995)); see also Grogan, 498 U.S. at 286-87. This is because it prevents Chapter 13, as well as Chapter 7, from becoming "an engine for fraud" by barring from both types of

---

[14] The Legislative Statements to § 523(a)(6) state that "[t]he phrase 'willful and malicious injury' covers a willful and malicious conversion." But the Legislative Statements do not address the distinction suggested in the previous version of the statute between those "willful and malicious conversion[s]" excepted under the fraud exception of Section 17(a)(2) and those excepted under Section 17(a)(8). Compare 11 U.S.C. § 35(a)(8) (1976) (qualifying the conversions excluded from Section 17(a)(8) as being those conversions covered by the fraud exception), with 11 U.S.C. § 523, Legislative Statements (noting that "'willful and malicious injury' covers a willful and malicious conversion").

discharge debts obtained by fraudulent conveyance.  See 11 U.S.C. § 1328; cf. McClellan, 217 F.3d at 893.  Were we to hold otherwise, and accept Ms. Lawson's argument that such conduct is covered by § 523(a)(6) instead of § 523(a)(2), then the perpetrators of the "two-step routine" alleged could make "as blatant an abuse of the Bankruptcy Code as we can imagine" simply by having the second debtor file for Chapter 13, rather than Chapter 7, bankruptcy.  Cf. McClellan, 217 F.3d at 893.

Chapter 13, it is true, provides a broader "fresh start" than Chapter 7 because the debtor attempts to make good on some of her obligations.  But, as the Supreme Court has repeatedly observed in "addressing different issues surrounding the scope of [this] exception," we think it "unlikely that Congress . . . would have favored the interest in giving perpetrators of fraud a fresh start over the interest in protecting victims of fraud" provided such perpetrators are especially clever, avoid all misrepresentations, and file under Chapter 13.  See Cohen, 523 U.S. at 223 (alteration in original) (quoting Grogan, 498 U.S. at 287).  Far from supporting Ms. Lawson's argument that we should read fraudulent conveyances to be proscribed by § 523(a)(6), and not § 523(a)(2)(A), the distinction between Chapter 13 and Chapter 7 discharge confirms our construction.

## C. Narrowness

Finally, there may be some concern that finding that the Palmacci test is not the exclusive test for "actual fraud" under § 523(a)(2)(A) untethers the "actual fraud" requirement from a narrow, principled approach to its construction. Cf. Blacksmith Invs., LLC v. Woodford (In re Woodford), 403 B.R. 177, 188-89 (Bankr. D. Mass. 2009); 43 R.E. Williams Am. Jur. Proof of Facts § 21 (3d ed. 2015) (discussing the difficulties in applying § 523(a)(2)(A) to debts created by credit card fraud). The Palmacci test provides a narrow construction with clear elements.[15] If, as the Seventh Circuit suggests, "[n]o definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated," then how is the fraud exception to be narrowly construed? Cf. McClellan, 217 F.3d at 893 (quoting Stapleton, 250 P.2d at 453-54).

---

[15] The Palmacci test applies the "traditional common law rule" for fraudulent misrepresentation. See Palmacci, 121 F.3d at 786. Under it, a creditor objecting to a debt "obtained by . . . actual fraud" effected through a misrepresentation must show that:

1) the debtor made a knowingly false representation or one made in reckless disregard of the truth, 2) the debtor intended to deceive, 3) the debtor intended to induce the creditor to rely upon the false statement, 4) the creditor actually relied upon the misrepresentation,

We need not and do not decide that question today. We hold only that the "actual fraud" exception to discharge under § 523(a)(2)(A) includes knowing receipt of a fraudulent conveyance where such receipt constitutes actual (as opposed to constructive) fraud. Cf. McClellan, 217 F.3d at 894 (emphasizing the requirement that the transferee have intended to thwart the transferor's creditor); Neal, 95 U.S. at 707 (distinguishing between those cases where receipt of fraudulent conveyance constitutes "actual fraud" owing to recipient's intent and those where receipt is merely "constructive fraud" as implied by law). But we make two observations.

First, we observe that, while there are other ways to give meaning to the distinction between "actual fraud" and "false representations" under § 523(a)(2)(A), they are not the most narrow available, nor are they consistent with the fraud exception's history. Cf., e.g., Field, 516 U.S. at 70 n.8 (declining to decide if a different type of reliance is required under "false pretense" or "false representation"); Mayer v. Spanel Int'l, Ltd. (In re

_____

5) the creditor's reliance was justifiable, and 6) the reliance upon the false statement caused damage.

Spigel, 260 F.3d at 32 & n.6 (citing Palmacci, 121 F.3d at 786; Field, 516 U.S. at 70-71).

- 26 -

Mayer), 51 F.3d 670, 674 (7th Cir. 1995) (Easterbrook, J.) (suggesting without deciding that "false pretense" or "false representation" may carry a different scienter requirement); Restatement (Second) of Torts §§ 525 et seq., 550 et seq. (1977) (discussing related torts of fraudulent misrepresentation, nondisclosure, negligent misrepresentation, and innocent misrepresentation). Rather, reading "false pretenses, false representations, and actual fraud" to be limited, roughly, to mean "fraudulent misrepresentation and other actual frauds" would provide the most consistent and narrow reading of § 523(a)(2)(A) by barring from discharge only those debts that "'arise[] as a direct result of the debtor's [fraudulent conduct].'" Spigel, 260 F.3d at 32 (quoting Century 21, 16 F.3d at 10); cf. Mayer, 51 F.3d at 674 (lamenting that courts have consistently read a culpable intent requirement into the "false pretenses" and "false representation[s]" language of the fraud exception). We need not decide today whether to adopt such a reading. Our point is only that our construction, far from broadening the fraud exception, permits the most narrow construction possible.

Second, we observe that the dangers to narrowness of reading "actual fraud" somewhat expansively -- and the abuse by creditors it might engender -- is protected against by the

provision of fees and costs to the debtor where "a creditor requests a determination of dischargeability" under § 523(a)(2) that is ultimately discharged and "the court finds that the position of the creditor was not substantially justified."  11 U.S.C. § 523(d).  Indeed, this is the only exception to discharge under § 523 for which such debtor protection is afforded, and it is afforded specifically to discourage creditors from such abuse. See S. Rep. No. 95-989, at 80 (noting that fees are available "if the court finds that the proceeding was frivolous or not brought by its creditor in good faith").

## III.

Finally, Ms. Lawson argues in the alternative that Sauer's complaint fails under our newly adopted standard because Sauer has alleged only constructive fraud.  See McClellan, 217 F.3d at 894.  But while our holding is emphatically limited to cases of actual, as opposed to merely constructive, fraud, and the heightened pleading requirements for fraud remain applicable, we decline to reach the issue.  See Fed. R. Civ. P. 9(b); Fed. R. Bankr. P. 7009.  Compare McClellan, 217 F.3d at 894 (noting that fraud is "constructive if the only evidence of it is the inadequacy of the consideration"), with Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007) (requiring under notice pleading standards factual

- 28 -

allegations "suggestive enough" to make a claim for "conspiracy plausible").  Cf. N. Am. Catholic Educ., 567 F.3d at 16 (refusing "to assume that no amendment could rescue certain of the claims").

The bankruptcy court and the parties proceeded on the apparent understanding that the principal obstacle to Sauer's suit was Sauer's inability to plead misrepresentation.[16]  Accordingly, we leave the issues of the adequacy of Sauer's pleading, and the possibility of amendment, to the bankruptcy court in the first instance.  See N. Am. Catholic Educ., 567 F.3d at 16 ("For deficiencies under Rule 9(b), leave to amend is often given, at least for plausible claims."); see also New Eng. Data Servs., Inc. v. Becher, 829 F.2d 286, 292 (1st Cir. 1987) (noting that the policy behind Rule 9(b) -- avoiding groundless claims, damage to a defendant's reputation, and ensuring notice -- must be balanced against "the policy in favor of allowing amendments and trying cases on their merits, and against dismissals which would deny plaintiffs their day in court"); cf. 11 U.S.C. § 523(d) (awarding costs and attorneys' fees for unsuccessful adversary proceedings under § 523(a)(2)(A) that are frivolous or brought in bad faith).

---

[16] Ms. Lawson does not appear to have pressed the adequacy argument before the bankruptcy court, focusing her energies instead on the failure to allege a misrepresentation under the Palmacci standard.

Accordingly, we <u>vacate</u> the bankruptcy court's grant of Ms. Lawson's motion to dismiss, and <u>remand</u> for further proceedings consistent with this opinion.  No costs are awarded.