NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>JEANEEN BONNETT,<br>　　　　　Debtor. | BAP No. AZ-19-1293-BTL |
| | Bk. No. 2:18-bk-01550-EPB |
| JEANEEN BONNETT,<br>　　　　　Appellant,<br>v.<br>MOIRBIA SCOTTSDALE, LLC,<br>　　　　　Appellee. | Adv. No. 2:18-ap-00223-EPB<br><br>**MEMORANDUM**<sup>*</sup> |

Appeal from the United States Bankruptcy Court
for the District of Arizona
Eddward P. Ballinger, Jr., Bankruptcy Judge, Presiding

Before:　BRAND, TAYLOR, and LAFFERTY, Bankruptcy Judges.

## INTRODUCTION

Appellant Jeaneen Bonnett appeals a judgment determining that the

debt of Moirbia Scottsdale, LLC ("Moirbia") was excepted from discharge

under § 523(a)(2)(A).[1] Moirbia had obtained a prior state court judgment

---

　*This disposition is not appropriate for publication. Although it may be cited for
whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential
value, *see* 9th Cir. BAP Rule 8024-1.

　[1] Unless specified otherwise, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of
Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil
Procedure.

against Bonnett in a fraudulent conveyance case, wherein Bonnett was the transferee. Moirbia sought to except the debt from Bonnett's discharge under § 523(a)(2)(A) and (a)(6), and later moved for summary judgment based on issue preclusion. Finding that the elements of issue preclusion were met, the bankruptcy court granted the motion on Moirbia's § 523(a)(2)(A) claim and thereafter entered a final judgment determining that the debt was excepted from Bonnett's discharge. We AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Background of the parties, the transfers, and the state court actions

#### 1. The parties

Moirbia is the assignee of an approximately $2 million judgment entered against Steven Goumas and his two wholly-owned entities known as Pub Company and My Goodness ("Goumas Judgment"). Moirbia acquired the Goumas Judgment in 2012 at a sale in the bankruptcy case of one of Goumas's other entities.

Bonnett is the president and director of 100% Natural Gourmet, Inc., dba Madison Group Consultants ("Madison"). Goumas and Bonnett have been business partners since 1999, and were romantically involved from the mid-1990's until 2010. Notably, Bonnett was the backup bidder in the sale of the Goumas Judgment in 2012.

Pub Company was the manager of, but did not own a membership interest in, Perfect Pint Holding Company LLC ("Perfect Pint"). The

management interest entitled Pub Company to receive 50% of Perfect Pint's distributions ("Management Interest"). The other 50% of Perfect Pint's distributions went to its members, one of whom was Goumas until he sold his 4.09% interest to Bonnett's brother. As the manager and sole member of Pub Company, Goumas received funds from Perfect Pint distributed to Pub Company via the Management Interest.

Perfect Pint was the sole member of Irish Pub-Tempe LLC. In 2011, Perfect Pint sold its membership interest in Irish Pub-Tempe LLC for $720,000 to Boer Hospitality, LLC ("Boer"). Boer was owned by Bonnett's brother. Boer paid Perfect Pint $360,000 cash and gave a promissory note payable to Perfect Pint for $360,000 ("Boer Note"). In satisfaction of Pub Company's right to 50% of Perfect Pint's distributions under the Management Interest, Pub Company acquired the Boer Note.

### 2.    The relevant transfers

In August 2012, Goumas and Pub Company assigned its Management Interest in Perfect Pint to Bonnett and Madison. Under the assignment, Bonnett and Madison received all of Pub Company's economic rights flowing from Perfect Pint, including the rights to receive payments under the Boer Note. The Boer Note was then valued at $358,572.00. At the time, the Management Interest constituted substantially all of Pub Company's and Goumas's assets. Thereafter, based on the Management Interest, Madison received from Perfect Pint payments on the Boer Note totaling $50,333.21 and

3

distributions of $61,054. Separately, Goumas assigned to Bonnett checks totaling $90,608.81 payable to him or entities he controlled.

### 3. The state court action against Bonnett

Moirbia sued Goumas and Bonnett seeking to avoid the alleged fraudulent transfers by Goumas to Bonnett under the Arizona Uniform Fraudulent Transfer Act, Arizona Revised Statutes ("A.R.S.") § 44-1004 (actual fraudulent transfer) and § 44-1005 (constructive fraudulent transfer). Moirbia alleged that Goumas and Bonnett engaged in a series of fraudulent transfers with the intent to hinder, delay or defraud Moirbia and its attempts to collect on the Goumas Judgment. Bonnett fully participated in the four-day bench trial ("Bonnett Trial"), including presenting evidence and witnesses and cross-examining Moirbia's witnesses.

After the Bonnett Trial, the state court determined that Bonnett was liable to Moirbia for actual fraudulent transfers under A.R.S. § 44-1004(A)(1). It entered the following relevant findings of fact and conclusions of law:

**Findings of Fact:**

20. Goumas's and Bonnett's personal relationship had a significant impact upon their business dealings and their intentions underlying the transfers alleged in this lawsuit.
. . .
24. Madison and Bonnett are insiders as to the Debtor entities.

25. When Lis Doon Varna [another Goumas controlled entity] faced financial difficulties, the [sic] Goumas and Bonnett constructed a scheme to transfer assets away from the businesses the Debtors

4

operated to Bonnett for the purpose of protecting those assets from creditors.

. . .

56.  Goumas's transfer of the Management Interest to Bonnett and Madison was a method of protecting that asset from Goumas's, Pub Company's and My Goodness's creditors.

57.  The transfer of the Management Interest was made with the intent to hinder, delay or defraud creditors of Goumas, Pub Company and My Goodness.

. . .

94.  The Bonnett defendants did not receive any of the above-described transfers that occurred within 4 years of the filing of this lawsuit . . . in good faith.

. . .

**Conclusions of Law**:

1.  Pursuant to A.R.S. section 44-1004(A)(1) and based on consideration of, inter alia, the factors set forth in A.R.S. section 44-1004(B),[2] Bonnett and Madison were the recipients of transfers made by Goumas, Pub Company or My Goodness, after the [Goumas] Judgment was entered, and the transfers were made with actual intent to hinder, delay, or defraud any creditor of Goumas, Pub Company or My Goodness and specifically Moirbia.

The state court entered a final judgment against Bonnett and Madison for $655,460.90 ("Bonnett Judgment"). Bonnett and Madison appealed the Bonnett Judgment to the Arizona Court of Appeals, which affirmed.

---

[2] A.R.S. § 44-1004(B) provides a list of factors the court can consider to determine "actual intent" under A.R.S. § 44-1004(A)(1). These factors are often referred to as the "badges of fraud."

**B.    Bonnett's bankruptcy case and Moirbia's § 523 action**

Bonnett filed a chapter 11 bankruptcy case on February 2, 2018. Bonnett did not object to Moirbia's motion to convert the case to chapter 7, and her case was converted on May 14, 2019.

Moirbia filed a complaint against Bonnett seeking to except the Bonnett Judgment from discharge under § 523(a)(2)(A) and (a)(6). Thereafter, Moirbia moved for summary judgment based on issue preclusion ("MSJ"). Moirbia argued that the issue of Bonnett's intent to defraud Moirbia was actually litigated in the Bonnett Trial, as demonstrated by the parties' Joint Pre-Trial Statement and the state court's findings and conclusions. Specifically, argued Moirbia, the state court found that Bonnett was the knowing recipient of the fraudulent transfers and that she actively participated in the fraudulent scheme with Goumas to hinder, delay or defraud Moirbia. Further, argued Moirbia, resolution of Bonnett's actual intent was essential to the Bonnett Judgment and the state court's determination that she was liable to Moirbia for damages resulting from the fraudulent transfer scheme under A.R.S. § 44-1004(A)(1). Moirbia argued it was undisputed that (a) Bonnett had a full and fair opportunity and motive to, and did, litigate the fraud issue in the Bonnett Trial, (b) the state court entered a valid and final decision on the merits against her, and (c) the parties in both cases were the same.

Bonnett opposed the MSJ and filed a cross-motion for summary judgment. Primarily, she argued that the state court found only that she

"received" an actual fraudulent transfer from Goumas; it did not find that she had any "actual intent" to defraud Moirbia as transferee. Thus, argued Bonnett, her actual intent was neither actually litigated nor essential to the Bonnett Judgment.

After a hearing, the bankruptcy court granted the MSJ on Moirbia's § 523(a)(2)(A) claim on the basis of issue preclusion, finding that the five elements were met.[3] The court determined that in order to avoid the transfers at issue, Moirbia had to not only prove that Goumas had fraudulently transferred assets to Bonnett under A.R.S. § 44-1004(A)(1), which it did, but that Bonnett did not, in turn, receive the transfers in good faith per A.R.S. § 44-1008(A). The court further reasoned that, in resolving the question of her intent, the state court concluded that Bonnett lacked good faith because the evidence established that she in fact participated in the scheme to defraud Moirbia. Thus, in the bankruptcy court's view, the issue of Bonnett's actual fraudulent intent for purposes of § 523(a)(2)(A) was actually litigated and was essential to the Bonnett Judgment finding her liable to Moirbia.

Thereafter, the bankruptcy court entered a judgment determining that the Bonnett Judgment was excepted from discharge under § 523(a)(2)(A). Bonnett timely appealed.

---

[3] The bankruptcy court denied Moirbia summary judgment on its § 523(a)(6) claim. Moirbia does not appeal that ruling.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.[4]

## III. ISSUE

Did the bankruptcy court err in granting summary judgment under § 523(a)(2)(A) based on issue preclusion?

## IV. STANDARDS OF REVIEW

We review de novo a bankruptcy court's decision to grant summary judgment and except a debt from discharge under § 523. *Zuckerman v. Crigler (In re Zuckerman)*, 613 B.R. 707, 713 (9th Cir. BAP 2020).

We also review de novo a bankruptcy court's determination that issue preclusion was available. *Id.* If issue preclusion is available, we then review the application for an abuse of discretion. *Id.* Under that standard, we reverse where the bankruptcy court applied the wrong legal standard, or misapplied the correct legal standard, or its factual findings are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *Id.* (citing *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011)).

---

[4] As noted above, the bankruptcy court denied the MSJ on Moirbia's § 523(a)(6) claim. Therefore, to facilitate an appeal, the bankruptcy court's judgment contained a Civil Rule 54(b) certification that it was a final judgment.

8

# V. DISCUSSION

## A. Governing law

### 1. Summary judgment standards

Summary judgment is appropriate when the pleadings and supplemental materials show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Civil Rule 56(a) (incorporated by Rule 7056); *Roussos v. Michaelides (In re Roussos)*, 251 B.R. 86, 91 (9th Cir. BAP 2000), *aff'd*, 33 F. App'x 365 (9th Cir. 2002).

The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A dispute is "genuine" if there is sufficient evidence for a reasonable fact-finder to hold in favor of the non-moving party, and a fact is "material" if it might affect the outcome of the case. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)). Once the moving party has met its initial burden, the non-moving party must show specific facts establishing the existence of genuine issues of fact for trial. *Anderson*, 477 U.S. at 256.

### 2. Issue preclusion standards

Issue preclusion applies in dischargeability proceedings to preclude relitigation of state court findings relevant to exceptions to discharge. *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991); *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001). And a bankruptcy court may apply the

9

doctrine to an existing state court judgment as the basis for granting summary judgment. *See Khaligh v. Hadaegh (In re Khaligh)*, 338 B.R. 817, 832 (9th Cir. BAP 2006), *aff'd*, 506 F.3d 956 (9th Cir. 2007). Federal courts "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). In this case, we apply Arizona law.

Under Arizona law, issue preclusion "applies when [1] an issue was actually litigated in a previous proceeding, [2] there was a full and fair opportunity to litigate the issue, [3] resolution of the issue was essential to the decision, [4] a valid and final decision on the merits was entered, and [5] there is common identity of parties." *Hullett  v. Cousin*, 204 Ariz. 292, 297-98 (2003) (en banc). To meet its burden, the party seeking to assert issue preclusion must have pinpointed the exact issues litigated in the prior action and introduced a record revealing the controlling facts. *Kelly v. Okoye (In re Kelly)*, 182 B.R. 255, 258 (9th Cir. BAP 1995), *aff'd*, 100 F.3d 110 (9th Cir. 1996). Reasonable doubts about what was decided in the prior action will weigh against applying issue preclusion. *Id.*

### 3.    Exceptions to discharge under § 523(a)(2)(A)

The creditor bears the burden to establish by a preponderance of the evidence that the debt at issue meets an exception to discharge under § 523. *Grogan*, 498 U.S. at 291. Section 523(a)(2)(A) provides that a debt may be

excepted from discharge to the extent it was obtained by "false pretenses, a false representation, or actual fraud."

"The term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Husky Int'l Elecs., Inc. v. Ritz*, — U.S. —, 136 S. Ct. 1581, 1586 (2016) ("*Husky*"). The recipient of a fraudulent transfer with the requisite intent commits fraud for purposes of § 523(a)(2)(A). *Id.* at 1589. "If that recipient later files for bankruptcy, any debts 'traceable to' the fraudulent conveyance will be nondischargeable under § 523(a)(2)(A)." *Id.* (internal citations omitted). "Such circumstances may be rare because a person who receives fraudulently conveyed assets is not necessarily (or even likely to be) a debtor on the verge of bankruptcy, but they make clear that fraudulent conveyances are not wholly incompatible with the 'obtained by' requirement." *Id.* (footnote omitted). *See also Sauer Inc. v. Lawson (In re Lawson),* 791 F.3d 214, 222 (1st Cir. 2015) ("We hold that the fraud exception to discharge codified at § 523(a)(2)(A) continues to bar from discharge debts incurred through knowing and intentional receipt of fraudulent conveyances as it has since 1867."); *McClellan v. Cantrell,* 217 F.3d 890, 893 (7th Cir. 2000) (holding same).

While the Supreme Court in *Husky* did not set forth what elements a creditor must prove for a claim under § 523(a)(2)(A) involving a fraudulent conveyance scheme, we agree that to succeed on a claim against the

11

debtor-recipient the creditor must prove:

> 1) the transferor conveyed the property with the intent to hinder or delay his creditors; and 2) the transferee was a participant in the fraud, such that it could be said that the debtor engaged in "deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another."

*Fisher v. Quay (In re Quay)*, Adv. No. 04-6065, 2005 WL 6488242, at *9 (Bankr. N.D. Ga. Mar. 29, 2005) (citing *McClellan*, 217 F.3d at 893). Accordingly, for the Bonnett Judgment to be declared nondischargeable under § 523(a)(2)(A) for actual fraud on the grounds of issue preclusion, there had to be some finding by the state court that Bonnett, as the recipient of transfers found to constitute actual fraud, acted with the requisite fraudulent intent in receiving such transfers.

**B.    The bankruptcy court did not err in granting summary judgment under § 523(a)(2)(A) based on issue preclusion.**

Bonnett challenges the bankruptcy court's ruling that the first (issue was actually litigated) and fourth (resolution of issue was essential to the decision) issue preclusion criteria were met. We address her arguments in turn.

**1.    There is an identity of issues and the issue of Bonnett's fraudulent intent was actually litigated in the Bonnett Trial.**

Bonnett argues that the issues in the Bonnett Trial were not the same as in the nondischargeability action. Specifically, she argues that only the issue

of her "good faith" as transferee was at issue in the Bonnett Trial and not whether she acted with the requisite fraudulent intent necessary for purposes of § 523(a)(2)(A). Bonnett argues that the bankruptcy court erred by conflating the issue of "not in good faith" under A.R.S. § 44-1008(A) with the issue of "actual intent" under *Husky* and § 523(a)(2)(A).

In Arizona, a transfer is fraudulent if the debtor made the transfer "[w]ith actual intent to hinder, delay or defraud any creditor of the debtor." *See* A.R.S. § 44-1004(A)(1). A transfer under this statute, however, is not avoidable against a person "who took in good faith and for a reasonably equivalent value[.]" *See* A.R.S. § 44-1008(A). This is an affirmative defense. To avoid the fraudulent transfers at issue, the state court had to determine (1) that the transfers were made with the intent to hinder, delay or defraud Moirbia, and (2) that Bonnett did not receive the transfers in good faith and for a reasonably equivalent value. In determining whether property is received in good faith for purposes of A.R.S. § 44-1008(A), "the question is whether [the recipient/transferee] knew, or should have known, that [the debtor/transferor] 'was not trading normally, but that on the contrary, the purpose of the trade, so far as the debtor was concerned, was the defrauding of his creditors.'" *Carey v. Soucy*, 245 Ariz. 547, 553-54 (Ct. App. 2018) (quoting *Hay v. Duskin*, 9 Ariz. App. 599, 605 (1969)).

Contrary to Bonnett's argument, there is an identity of issues. Both § 523(a)(2)(A) and A.R.S. § 44-1004(A)(1) require a determination of actual

fraud to find a defendant liable. The state court's finding that Bonnett did not receive the transfers in good faith is tantamount to a finding that she knew, or should have known, that the purpose of Goumas's transfers to her was to defraud Moirbia. And even more compelling is the state court's affirmative finding that Bonnett knowingly and actively participated in the scheme with Goumas to transfer assets away from the businesses he operated for the purpose of protecting those assets from creditors and specifically Moirbia. Thus, the issue of Bonnett's fraudulent intent, by way of lack of good faith and actual fraudulent intent in participating in the transfer scheme, was both raised and relevant in the Bonnett Trial. These issues are identical to the issues necessary to determine "actual fraud" under § 523(a)(2)(A). *See Wheeler Bros., Inc. v. Jones (In re Jones)*, 611 B.R. 685, 695-96 (Bankr. M.D. Ala. 2020) (rejecting similar argument from chapter 7 debtor that "identity of issues" was lacking because debtor was the "transferee" in the fraudulent transfer scheme and not the debtor/transferor under the Alabama UFTA).

Bonnett further argues that the issue of her intent was not "actually litigated" in the Bonnett Trial. She maintains that there is no reference to her intent in the state court's findings. Bonnett is simply wrong. As discussed above, the issue of Bonnett's fraudulent intent was raised in the Bonnett Trial and resolved in favor of Moirbia. The state court's express findings that the personal relationship between Goumas and Bonnett impacted "their" fraudulent intentions underlying the transfers, and that Bonnett knowingly

14

and actively participated in the fraudulent transfer scheme, establish that her fraudulent intent was actually litigated. *See Chaney Bldg. Co. v. City of Tucson*, 148 Ariz. 571, 573 (1986) ("When an issue is properly raised by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated.").

Lastly, Bonnett argues that issue preclusion should not apply because the issue of her good faith was an affirmative defense in the Bonnett Trial for which **she** bore the burden of proof, whereas **Moirbia** bore the burden of proving her actual fraud in the nondischargeability action. Bonnett argues that the bankruptcy court erred in determining nondischargeability by relying on a state court determination that she failed to meet her burden of proof on good faith. In other words, a lack of good faith does not necessarily equate to "bad faith" or an "actual intent" to defraud.

Bonnett cites no authority for the proposition that issue preclusion cannot apply if the party bearing the burden of proof or persuasion is different in the two subject proceedings. She cites *Tilbury v. Walden (In re Tilbury),* 74 B.R. 73 (9th Cir. BAP 1987), *aff'd*, 851 F.2d 361 (9th Cir. 1988), *and aff'd sub nom. Tilbury v. Walden*, 851 F.2d 361 (9th Cir. 1988). But *Tilbury* relates only to the difference in **degree** of the burden of proof in each case — i.e., "clear and convincing evidence" versus "preponderance of the evidence." Here, it is undisputed that the burden of proof in both proceedings was preponderance of the evidence.

15

Nonetheless, Bonnett's argument has some surface appeal and might be relevant in the right case. However, this is not that case. Moirbia brought an affirmative case for actual fraudulent transfer under A.R.S. § 44-1004(A)(1) against both defendants Goumas and Bonnett. Bonnett not only failed to establish her good faith in receiving the transfers from Goumas, which allowed the state court to avoid the transfers and find her liable, but Moirbia established Bonnett's actual intent to defraud Moirbia given the state court's affirmative finding that she knowingly participated in the fraudulent transfer scheme with Goumas. Simply put, Moirbia satisfied its burden of proof in both proceedings to establish Bonnett's actual intent to defraud.

## 2. Resolution of the issue of Bonnett's fraudulent intent was essential to the Bonnett Judgment.

Bonnett argues that the determination of her intent was not essential to the merits of Moirbia's claim under A.R.S. § 44-1004(A)(1), which refers only to the intent of the transferor, nor was it essential to the Bonnett Judgment. We disagree. A finding that Bonnett did not receive the transfers in good faith was essential to the judgment rendered against her as transferee. While the state court could have found that Goumas made the transfers with the actual intent to defraud Moirbia under A.R.S. § 44-1004(A)(1) without any reference to Bonnett, it could not have avoided the transfers under A.R.S. § 44-1008(A) and imposed liability on Bonnett absent a finding of her fraudulent intent or lack of good faith as well. Thus, it was essential for the state court to assess

16

Bonnett's fraudulent intent in determining whether the transfers were voidable. *See In re Jones*, 611 B.R. at 699-700 (reasoning that the district court's finding of debtor-transferee's fraudulent intent or lack of good faith was essential to its judgment voiding the fraudulent transfers under the Alabama UFTA).

**3.      Summary judgment in favor of Moirbia was proper.**

The bankruptcy court did not err in concluding that the issue of whether Bonnett committed "actual fraud" within the meaning of § 523(a)(2)(A) was precluded by the Bonnett Judgment and could not be relitigated in the bankruptcy court. We perceive no abuse of discretion in the bankruptcy court's decision to apply issue preclusion in this case.

Because of the preclusive effect of the Bonnett Judgment, Moirbia satisfied its burden of demonstrating that there were no genuine issues of material fact as to the elements of a claim under § 523(a)(2)(A). As a result, the bankruptcy court did not err in granting Moirbia summary judgment.

## VI. CONCLUSION

For the reasons stated above, we AFFIRM.